ARGONAUT INSURANCE COMPANY, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 13–92–195–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 16, 1993.

Rehearing Overruled Jan. 13, 1994.

538

Brian G. Janis, Sanchez, Whittington & Janis, Brownsville, for appellant.

J. Arnold Aguilar, Willette & James, Brownsville, for appellee.

1. Former Chief Justice, retired April 30, 1993.

Before GILBERTO HINOJOSA, NYE,[1] and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, Argonaut Insurance Company ("Argonaut"), challenges the trial court's granting of a summary judgment in favor of appellee, Allstate Insurance Company ("Allstate"). Argonaut, an excess insurance carrier, sued Allstate, the primary insurance carrier, under the theories of breach of contract and subrogation, to recover the policy limits of Allstate's primary coverage. We reverse and remand.

The dispute in question arose out of a final agreed judgment entered into by Argonaut and Allstate in a separate lawsuit. The separate lawsuit involved an auto accident that occurred between Maria Sandoval and Scott Franko. Franko was an employee of Electric Utility Construction, Inc. (EUCI), at the time of the accident.

Sandoval, her husband, and her minor child brought suit against Franko and EUCI for damages arising out of the auto collision. Initially, Paul O'Leary, on behalf of Argonaut, represented the defendants in the Sandoval suit. Roy Dale, on behalf of Allstate, subsequently took over the defense, with O'Leary remaining as co-counsel.

With Argonaut's consent, O'Leary negotiated, structured, and finalized a settlement agreement between the Sandovals, Franko, and EUCI. Dale played no part in the negotiations or the structuring of the settlement agreement. He attested that at all times he was preparing to go to trial. Dale's only participation in the settlement agreement was the placement of his signature, as attorney for Scott Franko, at the end of the final agreed judgment.

Dale attested that he signed the final agreed judgment only after he became aware that Argonaut had already satisfied the judgment. He asserted that a failure to sign the final agreed judgment when Argonaut had already satisfied the debt would have breach-

ed his ethical obligations to Franko, his client.

The final agreed judgment obligated EUCI and Franko to pay $80,000 to the Sandovals, to purchase an annuity for the Sandoval child in the amount of $920.78 per month for life, and stated that the attorney ad litem would receive $8,000. Because the $80,000 had already been paid and the annuity had already been purchased by Argonaut, the trial court ordered that the judgment was fully satisfied and discharged.

After the final agreed judgment was signed, Argonaut demanded that Allstate reimburse it for the policy limits of its primary coverage, which originally was calculated to be $50,000, but later determined to be $100,-000. Argonaut sued Allstate when the latter refused to pay any amount at all.

Argonaut pleaded that Allstate's assertion in a letter that it was the primary insurance carrier, combined with Dale's signature on the final agreed judgment, entitled Argonaut to reimbursement and contribution of $100,-000. Argonaut's breach of contract theory was that Dale's signature on the agreed judgment constituted a binding agreement pursuant to TEX.R.CIV.P. 11, giving rise to a claim for breach of contract. Both Allstate and Argonaut filed motions for summary judgment involving several issues, including breach of contract, breach of a settlement agreement, contribution, subrogation, and unjust enrichment. Ultimately, the trial court granted Allstate's motion for summary judgment and denied Argonaut's motion for summary judgment.

■■■ Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX.R.CIV.P. 166a(c). When reviewing a motion for summary judgment, 1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, 2) the evidence favorable to the non-movant will be taken as true, and 3) every reasonable inference will be indulged in favor of the non-movant and any doubts resolved in

its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When opposing parties file motions for summary judgment and the trial court grants one but denies the other, the reviewing court should consider questions presented to the trial court in both summary judgment motions. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

■■■ We now turn to the issue of whether Allstate's refusal to pay amounted to a breach of contract or breach of settlement. An agreed judgment is to be construed in the nature of a contract. *Barrientes v. Board of Trustees, Harlandale Indep. School Dist.,* 764 S.W.2d 28, 29 (Tex.App.—San Antonio 1989, writ denied). The elements of a contract, whether express or implied, are identical. *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). The determination of whether there was a meeting of the minds on each element of contract formation is based on objective standards of what the parties said and did and not on their alleged subjective states of mind. *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

■■■ We reject Argonaut's argument that the final agreed judgment constituted a binding contract or obligation between Argonaut and Allstate. Argonaut repeatedly asserts that such an obligation is "common practice" between insurers, but offers no evidence or authority whatsoever to support such a proposition. In response to Allstate's assertion that, even if the agreed judgment constituted a contract, it contains no terms delineating payment obligations, Argonaut rejected the necessity of such terms and stated that insurance companies, "pursuant to separate contractual provisions, make payments to fulfill the requirements of the respective judgments for which they are responsible." However, Argonaut never brought forth such a separate contractual provision. Accordingly, absolutely no evidence was offered to show that Allstate intended to reimburse Argonaut in any amount whatsoever. No words to such effect were contained in the final agreed judgment. Roy Dale, attorney

for Allstate, did not participate in the negotiation or structuring of the settlement. No evidence was offered to prove that Allstate and Argonaut had ever considered the written agreed judgment as a contract for reimbursement.

The final agreed judgment constituted a binding contract and obligation between the parties in the underlying suit, and not between the insurance carriers. Dale clearly placed his signature on the final agreed judgment in his capacity as Franko's attorney, and not Allstate's attorney. Although the reality may be that Allstate paid Dale's salary, the fact remains that Dale was representing Franko and EUCI, the insureds, and not Allstate, the insurance company. We hold as a matter of law that Allstate breached no contract or settlement agreement with Argonaut because no contract or settlement agreement between Allstate and Argonaut existed.

■ We now turn to the question of whether Argonaut was entitled to reimbursement based on a theory of unjust enrichment. A party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992).

■ Allstate has undoubtedly benefitted from Argonaut's satisfaction of the final agreed judgment. However, Argonaut has failed to illustrate in what way Allstate obtained that benefit by fraud, duress, or the taking of an undue advantage. Argonaut is another insurance company, just like Allstate, and was perfectly capable of either supplementing the agreed judgment with terms of reimbursement, or drawing a secondary contract for reimbursement. Argonaut offered no proof of fraud or duress. We hold as a matter of law that Argonaut was not entitled to recover from Allstate under the theory of unjust enrichment.

The final issues to address are whether Allstate was liable to Argonaut under the theories of contribution and subrogation. In its response to Allstate's motion for summary judgment, Argonaut withdrew any claims for

tortious contribution which it may have made. Accordingly, the applicability of contribution to the facts of this case will not be addressed.

Argonaut, however, did not waive its subrogation claim. It asserted in its answer to Allstate's motion for summary judgment that Allstate was not entitled to summary judgment as a matter of law because, under the doctrine of subrogation, Argonaut was entitled to reimbursement of policy limits in the amount of $100,000. Subrogation may be contractual (conventional) or equitable. *Liberty Mut. Ins. Co. v. General Ins. Corp.,* 517 S.W.2d 791, 797 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.).

> Subrogation is the substitution of one person in the place of another, whether as creditor or as the possessor of some lawful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim.... By subrogation, a court of equity, for the purpose of doing exact justice between parties in a given transaction, places one of them, to whom a legal right does not belong, in the position of a party to whom the right does belong. *McBroom–Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32, 36 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.).

"The courts of Texas have always been peculiarly hospitable to the right of subrogation and have been in the forefront of upholding it." *McBroom–Bennett Plumbing, Inc.,* 515 S.W.2d at 36; *see also Yonack v. Interstate Sec. Co. of Texas,* 217 F.2d 649, 651 (5th Cir.1954).

■ Subrogation is more widely known in the context of insurance companies seeking subrogation from their insureds for having involuntarily, under a contract of indemnity, paid a debt for which another is liable. *See, e.g., Ortiz v. Great S. Fire & Cas. Ins. Co.,* 597 S.W.2d 342 (Tex.1980). The underlying justification for such a subrogation suit is to prevent the insured from receiving a double recovery. *Id.* at 343. However, the doctrine of subrogation is given a liberal application and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in

equity and good conscience should have been discharged by the latter.[2] *Forney*, 511 S.W.2d at 386; *McBroom–Bennett Plumbing, Inc.*, 515 S.W.2d at 36. Thus, the two key elements of equitable subrogation are 1) that the party on whose behalf the claimant discharged a debt was primarily liable on the debt, and 2) that the claimant paid the debt involuntarily.

The more disputed element of equitable subrogation is the voluntariness of the claimant's payment. Texas courts have been liberal in their determinations that payments were made involuntarily. In *Hill v. Watts*, 801 S.W.2d 176, 177 (Tex.App.—Beaumont 1990, writ denied), the court held that a claimant who paid back taxes on property which he acquired by fraudulent means was not acting voluntarily because his title to the property was voidable, and not void. In *Texas Real Estate Comm. v. Century 21 Sec. Realty*, 598 S.W.2d 920, 922 (Tex.Civ.App.— El Paso 1980, writ ref'd n.r.e.), the court held that a company repaying its defrauded customers, who had been defrauded by the company's salesman, was not acting voluntarily. The court stated that the company "was protecting its own interest, both morally and legally, since it would have been responsible for the debt." *Id.*

In the context of a subrogation cause of action between excess and primary insurance carriers, the courts have impliedly held that, by virtue of their secondary liability on insurance policies, excess insurance carriers' payments to insureds on behalf of primary carriers are not "voluntary." In *Liberty Mut. Ins. Co.*, 517 S.W.2d at 797, the court held that "Continental [excess carrier] was secondarily liable and was therefore entitled to legal equitable subrogation against Liberty [primary carrier]." In *American Centennial Ins. v. Canal Ins.*, 843 S.W.2d 480, 483 (Tex. 1992), the Texas Supreme Court held that an excess carrier may bring an equitable subrogation action against a primary carrier to enforce the *Stowers* duties already imposed on the primary carrier, and for which the excess carrier would also be liable.[3] *See G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved).

■■■ Before considering the merits of Argonaut's subrogation claim, we first must determine whether Argonaut's petition satisfactorily pleaded a claim for relief under the doctrine of subrogation. Pleadings must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." *Tex.R.Civ.P.* 47(a). In determining whether a cause of action has been pleaded, a plaintiff's petition must be clear enough for the court to ascertain with reasonable certainty, upon examining the pleadings, the elements of the plaintiff's cause of action and the relief sought, with sufficient information on which to base a judgment. *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 658 (Tex.App.—Corpus Christi 1991, writ denied) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979)). A petition is generally construed as favorably as possible to the pleader, with the court considering the pleader's intent and overlooking a failure to specifically allege an element of a cause of action. *Allsup*, 808 S.W.2d at 658. The test is whether an opposing attorney of reasonable competence could ascertain from the pleadings "the nature and basic issues of the controversy and the testimony probably relevant." *Davis v. Quality Pest Control*, 641 S.W.2d 324, 328

---

**2.** For example, equitable subrogation has been invoked to prevent "unjust enrichment" of a prior property owner when the purchaser of the property at a foreclosure sale discharged an outstanding tax lien on the property to protect his interest in title. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980). Equitable subrogation has also been properly invoked by a husband who paid his wife's and her ex-husband's back taxes to remove a lien held by the Internal Revenue Service on his and his wife's checking accounts. *Forney v. Jorrie*, 511 S.W.2d 379, 386 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.).

**3.** In holding that an excess carrier may bring an equitable subrogation action against a primary carrier for failing to settle within policy limits, the Texas Supreme Court cited similar holdings by numerous other states' courts. *American Centennial Ins.*, 843 S.W.2d at 482–83. The common policy justifications underlying all of the courts' holdings were to 1) encourage fair and reasonable settlement of lawsuits, and 2) prevent an unfair distribution of losses among primary and excess insurers. *Id.*

(Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Matters that are presumed by the law need not be alleged. 2 R. McDonald, TEXAS CIVIL PRACTICE § 7:13 (1992 ed.).

 Argonaut pleaded that it was the excess insurance carrier and that Allstate was the primary insurance carrier in the suit below. It also pleaded that it had satisfied the entire final agreed judgment, including Allstate's share in the amount of $100,000, for which it was seeking reimbursement. Viewing the petition in favor of Argonaut, we hold that these allegations were sufficient to plead a cause of action for subrogation against Allstate. *Allsup,* 808 S.W.2d at 658. Argonaut's failure to specifically plead the involuntariness of its payment may be overlooked. *Id.* Since, as an excess carrier, Argonaut was secondarily liable, its payment on behalf of Allstate was presumptively involuntary, *Liberty Mutual Ins. Co.,* 517 S.W.2d at 797; *American Centennial Ins.,* 843 S.W.2d at 83; *see, e.g., Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1394 (10th Cir.1987), and did not need to be alleged, 2 R. McDonald, TEXAS CIVIL PRACTICE § 7:13 (1992 ed.). Moreover, at no time has Allstate asserted that it was not given "fair notice" pursuant to TEX.R.CIV.P. 47(a) that Argonaut was seeking subrogation.[4] We hold that Argonaut pleaded facts sufficient such that an attorney of reasonable competence could have ascertained from the pleadings the basic issues of the controversy and the relevant testimony. *Davis,* 641 S.W.2d at 328.

 Turning to the merits of Argonaut's subrogation claim, we must determine whether Allstate, as the summary judgment movant, brought before the trial court such facts and law as to prove that no genuine issue of material fact existed and that Allstate was entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon,* 690 S.W.2d at 548. Allstate never disputed that it was primarily liable for the first $100,000 of the underlying policy. It maintained at all times that Argonaut's payment was voluntary and

that, therefore, Argonaut was precluded from asserting a claim for equitable subrogation.

However, as the reviewing court, we are not convinced that Argonaut's payment was voluntary as a matter of law. The underlying Sandoval lawsuit was pending, for which, O'Leary attested, Argonaut risked great potential liability. O'Leary had negotiated a settlement agreement, the reasonableness of which was never challenged by Allstate. Moreover, although not raised in its briefs, Argonaut was equally liable for any *Stowers* claims for failure to settle within policy limits. This knowledge, weighed against Allstate's bald assertion that Argonaut voluntarily paid the entire final agreed judgment, is enough to have raised a fact question on the issue of voluntariness. We hold that Allstate is not entitled to summary judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon,* 690 S.W.2d at 548.

The judgment of the trial court is REVERSED and REMANDED.

Former Chief Justice NYE, not participating.

---

4. Allstate asserted that, by virtue of its failure to affirmatively assert subrogation until its answer to Allstate's motion for summary judgment, Argonaut was barred by the statute of limitations. By

holding that Argonaut did, in fact, plead a cause of action for subrogation, we reject Allstate's limitations argument.