MATAGORDA COUNTY, Texas and
Keith Kilgore, Appellants,

v.

TEXAS ASSOCIATION OF COUNTIES
COUNTY GOVERNMENT RISK MANAGEMENT POOL, Appellee.

No. 13–97–074–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 20, 1998.

 

Robert D. Allen, Douglas R. Hafer, Baker & McKenzie, Aaron L. Mitchell, Vial, Hamilton, Koch & Knox, Dallas, for appellants Matagorda County, Texas and Keith Kilgore.

Lawrence P. Gwin, Jr., Bay City, George H. Kolb, James Michael Meredith, Dallas, Todd A. Hunter, Hunter & Handel, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

**OPINION**

SEERDEN, Chief Justice.

Matagorda County and Sheriff Keith Kilgore (Collectively "the County") appeal from a judgment granting to the County's liability insurer, Texas Association of Counties County Government Risk Management Pool ("TAC"), reimbursement for the costs of defense and settlement of a federal lawsuit against the County by prisoners complaining of jail conditions. The County raises nine points of error complaining, among other things, that no right to reimbursement exists. We reverse and render judgment in favor of the County.

Since the late 1980s, TAC has provided law enforcement liability insurance to Matagorda County, protecting the County against claims for personal injury, bodily injury, property damage, and violation of civil rights. However, since 1991, TAC has included an endorsement to its policy specifically excluding from coverage any claim "arising out of jail." In 1993, three prisoners from the Matagorda County jail sued the County in federal court for damages arising out of assaults that occurred in the jail.

The County promptly requested coverage and defense by TAC as provided in the insurance policy in connection with these claims. TAC disputed coverage and brought the present action against the County asking for a declaratory judgment that the claims were not covered by TAC's policy. Nevertheless, TAC provided a defense to the County against the prisoner's lawsuit, while still reserving its right to challenge coverage.

On September 18, 1995, TAC informed the County that it had received, and intended to accept, a settlement offer of $300,000. TAC further stated that it would, if coverage were decided in TAC's favor, seek to recover the full settlement amount from the County. In early 1996, TAC settled the prisoner's lawsuit in accordance with the offer.

TAC then amended its declaratory judgment action to request reimbursement of the amount of its defense and settlement costs associated with the federal lawsuit against the County. The trial court granted a partial summary judgment finding that the TAC

policy excluded the federal lawsuit from coverage. After a trial on various defenses asserted by the County, the jury returned a verdict finding that the County had accepted the jail exclusion endorsements and was estopped from claiming that it was unaware of such endorsements. The trial court then entered a final judgment granting TAC recovery of both its $300,000 settlement payment and $53,522.15 in attorney's fees paid by TAC for defending the federal lawsuit, interest, attorney's fees and costs in connection with the present lawsuit.

By its first point of error, the County complains that TAC had no right to reimbursement for either defense costs or the cost of settling the federal lawsuit. There was no mention in the insurance policy itself of a right to either form of reimbursement, nor does TAC contend that the policy conferred such rights. Accordingly, we look outside the policy to determine whether TAC has any rights to reimbursement.

## Reimbursement of Defense Costs

■ With regard to defense costs, we have found no Texas cases that would recognize such a right to reimbursement. However, those state and federal courts that have examined the issue have generally denied the right of an insurer to seek reimbursement of defense costs for uncovered claims unless the insurer's reservation of rights letter specifically notified the insured that reimbursement of defense costs would later be sought and thus created a quasi-contractual duty to reimburse.

In *Buss v. Superior Court,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, 776–78 & 784 n. 27 (1997), the California Supreme Court found a quasi-contractual right of a liability insurer to collect from its insured reimbursement for defense costs of certain claims only *if* the insurer specifically reserved its right to seek reimbursement of defense costs at or before the time it provided a defense. *See also Resure, Inc. v. Chemical Distributors, Inc.,* 927 F.Supp. 190, 194 (M.D.La.1996), *aff'd,* 114 F.3d 1184 (5 th Cir. 1997) (under New Mexico law specific reservation of right is required to seek reimbursement of defense costs).

Similarly in *Knapp v. Commonwealth Land Title Insurance Co.,* 932 F.Supp. 1169, 1172 (D.Minn.1996), a Minnesota federal court concluded that, only when the insurer's reservation of rights letter clearly indicates its intention to later seek reimbursement for defense costs does the insured's silent acceptance of the defense provided by the insurer constitute an implied agreement to the reservation of rights and entitle the insurer to reimbursement of attorney's fees and costs.

■ Reimbursement of defense costs is not allowed when the reservation of rights letter is silent about reimbursement and the record does not reflect an agreement or understanding that the insured would reimburse if later it was determined there was no duty to defend. *Michaelian v. State Compensation Insurance Fund,* 50 Cal.App.4th 1093, 58 Cal.Rptr.2d 133, 144 n. 8 (1996); *In re Hansel,* 160 B.R. 66, 70 (Bankr.S.D.Tex. 1993) (applying Texas law); *see also Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1219–20 (3 rd Cir.1989) (concluding generally, under Pennsylvania law, that even when the insurer defends under a reservation of rights letter, it may not later recover costs expended in defending the insured, on the ground that the insurer's provision of a defense is as much for its own benefit as for the insured's).

Texas, like other states, recognizes certain rights to reimbursement under theories of implied and quasi-contract, which are often considered together or even synonymous with other equitable theories of unjust enrichment and quantum meruit, all of which generally allow restitution of benefits conferred on a party that it would be unjust for him to retain. *See PIC Realty Corp. v. Southfield Farms, Inc.,* 832 S.W.2d 610, 614 (Tex.App.—Corpus Christi 1992, no writ); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied); *La Chance v. Hollenbeck,* 695 S.W.2d 618, 620 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Berger Engineering Co. v. Village Casuals, Inc.,* 576 S.W.2d 649, 652 (Tex.Civ.App.— Beaumont 1978, no writ).

■ Specifically, quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Id.; Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992); *The Cadle Co. v. Butler*, 951 S.W.2d 901, 914 (Tex.App.—Corpus Christi 1997, no writ).

■ Similarly, a party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros.*, 832 S.W.2d at 41–42. Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *Id.* For a person to be entitled to restitution under a theory of unjust enrichment, he must also show that the person sought to be charged had wrongfully secured a benefit or had passively received one which it would have been unconscionable to retain. *S.S. Smith & Sons Masonry*, 736 S.W.2d at 250.

When Texas law of quasi-contract, unjust enrichment, and quantum merit is applied to the right of an insurer to seek reimbursement of a voluntarily provided defense, it seems clear that we must follow the same logic as used in federal and sister states' courts. Absent specific notice to the insured that he may later be charged for these costs, the insurer has no right to reimbursement.

In the present case, TAC's September 8, 1995, reservation of rights letter to the County stated, in relevant part:

This letter notifies you about certain coverage conditions and exclusions and informs you that a defense will be provided to you under [the insurance policy], subject to a "reservation of rights," meaning the Pool reserves its right to contend that the allegations in the Complaint may not be covered under the coverage document.

Although this letter further encouraged the County to consult with its own attorney concerning coverage, it did not contain any suggestion that TAC would attempt to recover its costs of defense if coverage were decided against the County. Accordingly, we conclude that TAC failed to reserve any right to reimbursement of defense costs and that the County is not liable for such costs.

### Reimbursement of Settlement Costs

■ With regard to the recovery of settlement costs, theories of quantum meruit and unjust enrichment do not apply if the insured's settlement with the claimant bypasses the insured and does not require its acceptance or approval. *See Heldenfels Bros.*, 832 S.W.2d at 41–42; *Vortt*, 787 S.W.2d at 944; *see also Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 540–41 (Tex.App.—Corpus Christi 1993, writ denied) (excess insurer who settles the underlying lawsuit entirely may not then sue the primary insurer for reimbursement of the limits of primary coverage under a contract theory absent an agreement by the primary insurer for such reimbursement, or under a theory of unjust enrichment absent some showing of fraud, duress or the taking of an undue advantage).

■ However, TAC argues that it is equitably subrogated to the rights of the underlying claimants to recover the amount paid in settlement of the claims against the County. The doctrine of equitable subrogation is given a liberal application and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter. *Argonaut Ins.*, 869 S.W.2d at 542 (excess carrier may be equitably subrogated to the rights of the insured against the primary carrier to the extent of its primary liability to pay a settlement); *McBroome–Bennett*

*Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). However, the doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own. *First Nat. Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex.1993) (citing *Oury v. Saunders,* 77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890)).

Unlike a mere volunteer, an insurance company settles questionable claims against its insured in order fulfill its duty to the insured and to protect itself from future liability for refusing a reasonable settlement offer should the claim later be determined to have been covered. *See G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved); *see also Argonaut,* 869 S.W.2d at 543. Nevertheless, because of the special relationship between the insurer and its insured, there are good reasons to deny subrogation absent the insured's agreement to the settlement and to the later potential for reimbursement.

In *Highway Ins. Underwriters v. J.H. Robinson Truck Lines,* 272 S.W.2d 904 (Tex. Civ.App.—Galveston 1954, writ ref'd n.r.e.), the Galveston Court of Appeals denied the right of a liability insurer to reimbursement against its insured for amounts paid in settlement, reasoning that the insurer generally has no authority to settle an uncovered claim with insured's own funds:

> But what were the rights of [the insurer] under the policy to settle the [third party's] claim? To pay same off with its own money, not to pay it off for the account of [the insured]. Here [the insurer] had the right to stand on its claim that [the claim against the insured was not covered]. In such case, [the insurer] had no right to agree that [the insured] was liable to [the third party claimant]. In other words, if [the insurer] contends that the policy, as between insurer and insured, was in force so as to authorize [the insurer] to settle

the suit, then [the insurer] was serving its own purpose when it paid the claim off. Certainly it is novel doctrine to say that by paying such claim [the insurer] became subrogated to the [third party's] claim, as against its own insured. On the other hand, if the policy was not in force as between the insured and the insurer, [the insurer] had no authority thereunder to settle the claim and suit.

*Id.* at 908.

Other states as well have held that, whether or not there is coverage, a liability insurer is not entitled to reimbursement for the amount of a settlement paid to the claimant when the insured did not authorize the payment or agree to reimburse the insurer if it prevailed on the coverage issue. *Johansen v. California State Automobile Association Inter-Insurance Bureau,* 15 Cal.3d 9, 123 Cal. Rptr. 288, 538 P.2d 744, 750 (1975); *Val's Painting and Drywall, Inc. v. Allstate Insurance Co.,* 53 Cal.App.3d 576, 126 Cal.Rptr. 267, 273–74 (1975); *Medical Malpractice Joint Underwriting Association v. Goldberg,* 425 Mass. 46, 680 N.E.2d 1121, 1127–29 (1997); *but see Arkwright–Boston Manufacturers Mutual Insurance Co. v. Aries Marine Corp.,* 932 F.2d 442, 447 (5th Cir.1991); *Certain Underwriters at Lloyds, London v. Oryx Energy Co.,* 957 F.Supp. 930, 934 (S.D.Tex.1997) (right to assert coverage defenses and to seek reimbursement of amounts paid in excess of such coverage are not waived by funding settlement under reservation of rights).

This follows as well from the general principle that an insurer does not have a right of subrogation against its own insured to recover for sums paid out under the insurance policy. *See AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,* 920 F.Supp. 1318, 1326 (S.D.Tex.1996); *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.,* 418 F.Supp. 56, 58 (N.D.Tex.1976); *McBroome–Bennett Plumbing,* 515 S.W.2d at 36.

In *Stafford,* the insurance company happened to be both the liability insurer for the negligent party and the property loss insurer for the injured party. After the insurer settled the claim by paying off the injured party for more than the liability policy but less

than maximum coverage on the property loss policy, the insurer claimed subrogation through its property loss insured as against its liability insured for the excess not covered by the liability policy.

The *Stafford* court noted that the prohibition against an insurer subrogating itself against its insured is based, among other things, on the public policy considerations raised in violating the fiduciary relationship between the two. *Stafford,* 418 F.Supp. at 58–59. The *Stafford* court concluded that "the situation where an insurer attempts to subrogate and sue his own insured, whom he is obligated to defend, gives rise to so many opportunities for conflict of interests or misrepresentation of the insured that public policy commands that the insurer be denied the right to do so." *Stafford,* 418 F.Supp. at 62.

The Texas Supreme Court has more recently recognized a "special relationship" between an insurance company and its insured, giving rise to duties of good faith and fair dealing. *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.,* 823 S.W.2d 591, 593–94 (Tex.1992); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212–13 (Tex. 1988); *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). Allowing the insurer to unilaterally settle uncovered claims and then step into the shoes of the claimant and sue its own insured runs counter to this relationship and to public policy interests in fostering trust and eliminating conflicts of interests between the insurer and its insured.

As the Galveston Court of Appeals recognized in *Highway Ins. Underwriters,* 272 S.W.2d at 908, it is a "novel doctrine" that would allow the insurer to become subrogated to a claim against its own insured for reimbursement of settlement amounts. We conclude that, absent a specific agreement by the insured to be bound by the settlement and to allow reimbursement to the insurer if the coverage issue is later determined against the insured, the insurer has no right of subrogation against its own insured to recover the amount of the settlement.

In the present case, the TAC's September 18, 1995, letter clearly showed its intention to seek reimbursement of the settlement amount, but there is no indication that the County agreed either to be bound by the settlement or that TAC could later seek reimbursement. As the letter itself acknowledges, the County had stated that it was looking to TAC to settle the lawsuit without contribution from the County. Moreover, the County's later stipulation that the settlement amount was reasonable is no substitute for an agreement to be bound thereby at the time of settlement.[1] Even a "reasonable settlement" might reasonably be rejected if the insured knows that it may later be paying the settlement out of its own pocket.

Under these circumstances, we conclude that, regardless of whether the claim was subsequently determined to be beyond the coverage of TAC's liability policy, TAC has not shown itself entitled to recover reimbursement for the settlement amount that it paid.

We sustain the County's first point of error.

The County's remaining points of error are not dispositive and we do not address them. *See* TEX.R.APP. P. 47.1.

The judgment of the trial court is REVERSED and judgment is RENDERED that TAC take nothing against the County.

---

1. Parties may stipulate only to facts, and courts are not bound by stipulations to legal conclusions to be drawn from the facts of the case. *C & A Investments, Inc. v. Bonnet Resources Corp.,* 959 S.W.2d 258, 261 (Tex.App.—Dallas 1997, writ denied); *Cartwright v. MBank Corpus Christi, N.A.,* 865 S.W.2d 546, 549 (Tex.App.—Corpus Christi 1993, writ denied); *Martinez v. Hardy,* 864 S.W.2d 767, 770 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Smith v. Morris & Co.,* 694 S.W.2d 37, 39 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Accordingly, stipulations in the present record concerning the reasonableness of the settlement or an allegedly implicit stipulation that the County would "otherwise be required to reimburse TAC" if coverage was determined against it do not affect our interpretation of the legal issues.