COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-460-CV

C. GREEN SCAPING, L.P.                                             APPELLANT AND

 CROSS-APPELLEE 

V.

WESTFIELD INSURANCE COMPANY                             APPELLEE AND

 CROSS-APPELLANT 

------------

FROM THE 67
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant and Cross-Appellee C. Green Scaping, L.P. (“CGS”) sued Appellee and Cross-Appellant Westfield Insurance Company (“Westfield”) on a payment bond issued by Westfield under section 2253 of the Texas Government Code.  Following a bench trial, the trial court entered judgment for CGS.  In two issues, CGS challenges the sufficiency of the evidence supporting the trial court’s finding that CGS was liable for liquidated damages in the amount of $15,000 and argues that the trial court abused its discretion by not awarding CGS attorney’s fees.  Westfield argues that the trial court erred by failing to offset CGS’s award in an amount equal to the trial court’s award to Greenscape Pump Services, Inc. (“Greescape Pump”), another party involved in the lawsuit, and that the evidence is legally and factually insufficient to show that CGS gave timely notice of one of its payment bond claims.  We will affirm in part and reverse and render in part.

II.  Factual and Procedural Background

SRO General Contracting, Inc. (“SRO”) entered into a public works contract with the City of Fort Worth (“the City”) to reconstruct a portion of Evans Avenue.  SRO subcontracted part of the work to CGS, which was responsible for everything “back of the curb”—bricks, brick pavers, sidewalks, decorative concrete sidewalks, columns, monuments, irrigation, landscaping, and a fountain.  CGS subcontracted the equipment, material, and labor for the fixed architectural fountain equipment to Greescape Pump.

As required by the City’s and SRO’s contract and section 2253 of the government code, SRO secured a payment bond issued by Westfield in the amount of the contract.  Payments to SRO’s subcontractors were ultimately made through a disbursement control account managed by AACON, Inc.

SRO began work on the project after some initial delays.  Thirteen or fourteen change orders were made to the project’s plans, and the City increased the number of days given SRO to complete the project at least once. CGS experienced difficulty beginning work on its portion of the construction after receiving notice to proceed in April 2003 because SRO had not completed part of its work, such as grading and installing steel columns, but CGS eventually completed the work under its contract with SRO.  Greenscape Pump also completed its work under the subcontract with CGS.

CGS filed payment bond claims with Westfield on July 14, 2003, October 14, 2003, December 12, 2003, March 10, 2004, and June 1, 2004, for unpaid amounts allegedly due for labor performed, materials furnished, and retainage. CGS also filed a payment bond claim on September 28, 2004, after the City’s final inspection in June 2004 but before the City “clos[ed] out the project” in August 2005.  When Westfield ultimately withheld $87,424.31 of CGS’s claimed amounts, CGS sued Westfield, alleging damages in the amount of $87,424.31, which represented approximately $48,138.68 for retainage, $7,867.74 for work performed during July and August 2004, and approximately $33,000 for work performed under line item twenty-three of the SRO—CGS subcontract agreement.  CGS also sued SRO and the City.

Greenscape Pump filed one or more payment bond claims with Westfield for unpaid labor and materials, too.  Westfield paid all but $5,561.25. Greenscape Pump sued Westfield for this remaining balance and sought attorneys’ fees.

CGS obtained a default judgment against SRO in the amount of $87,424.31 and nonsuited its claims against the City before trial, leaving Westfield as the sole defendant.  At trial in March 2006, witnesses testified that the City assessed liquidated damages against SRO for delays in timely completing the project.  Westfield attempted to elicit testimony from Bill Hurst, an inspector for the City who worked on the Evans Avenue project, about construction delays and liquidated damages attributable to CGS, but the trial court sustained CGS’s objection to the testimony because Westfield did not assert delay or liquidated damages as affirmative defenses to CGS’s payment bond claim.  The trial court did, however, allow Westfield to make an offer of proof setting forth the excluded evidence.

The trial court signed its findings of fact and conclusions of law on May 29, 2006.  The trial court found in part that Westfield was liable to Greenscape Pump in the amount of $5,561.25 plus attorneys’ fees and that Westfield was liable to CGS in the amount of $56,006.42, representing $48,138.68 for retainage and $7,867.74 for work performed “in the summer of 2004.”  The trial court found that CGS was liable for liquidated damages in the amount of $15,000.00, which reduced CGS’s award to $41,006.42, because CGS “did not timely perform its work under the subcontract and the City of Fort Worth assessed liquidated damages against SRO for delayed completion caused by CGS.”  The trial court also found that CGS was not entitled to recover the approximately $33,000.00 that it had requested pursuant to line item twenty-three of SRO’s contract with the City, that Westfield was not entitled to offset the amount awarded to Greenscape Pump from the amount awarded to CGS, and that CGS was not entitled to attorney’s fees.

In November 2006, the trial court signed an order granting Westfield’s motion for leave to amend its pleadings.  Westfield included for the first time an assertion in its second amended petition that “SRO was assessed liquidated damages by the City of Fort Worth for failure of the work to be completed on time” and that “CGS was the direct or indirect cause of the delay and that any liquidated damages assessed against SRO and caused directly or indirectly by CGS should be offset against any amounts recovered by CGS from Westfield.” The trial court also signed its final judgment in November 2006 awarding CGS $41,006.42.  Westfield “resolved” “all matters between” it and Greenscape Pump.  Both CGS and Westfield appeal.

III.  Sufficiency Arguments

In its first issue, CGS argues that the evidence is insufficient to support the trial court’s twenty-eighth and twenty-ninth findings of fact that CGS failed to timely perform its work, that the City assessed liquidated damages against SRO for the delayed completion of the project because of CGS, and that CGS is liable for liquidated damages caused by the delays in the amount of $15,000.00.  In its second issue, Westfield argues that the evidence is insufficient to support the trial court’s twenty-seventh, thirtieth, thirty-first, thirty-fourth, and part of the thirty-ninth findings of fact that CGS timely filed its September 28, 2004 payment bond claim and that CGS is entitled to recover $7,867.74.

A. Standards of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.  
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994).
  Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  
Citizens Nat’l Bank v. City of Rhome
, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); 
Dominey v. Unknown Heirs and Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827
 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  
When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.  
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial evidence.  
Russell v. Russell,
 865 S.W.2d 929, 933 (Tex. 1993).  However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla.  
Blount v. Bordens, Inc.
, 910 S.W.2d 931, 933 (Tex. 1995).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406–07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

B. Legally Insufficient Evidence of Delay and Liquidated

Damages Attributable to CGS

Although the trial court prohibited Westfield from introducing evidence about delays caused by CGS and resulting liquidated damages when it sustained CGS’s objections to Westfield’s delay evidence, denied Westfield’s oral motion for a trial amendment on liquidated damages, and required Westfield to introduce the excluded evidence through an offer of proof, the trial court later found that the City had assessed liquidated damages against SRO for delays caused by CGS and that CGS was liable for liquidated damages in the amount of $15,000.00.  CGS argues that these findings are in “direct conflict with the fact that the trial court sustained CGS’[s] objection disregarding any evidence of delays or liquidated damages” and that there is no evidence that CGS was responsible for the delays and $15,000.00 in liquidated damages.  Westfield responds by directing us to evidence admitted outside the offer of proof, arguing that sufficient evidence supporting the challenged fact findings exists there.  Because the trial court excluded Westfield’s direct evidence of CGS’s delays and liquidated damages, all of the evidence relied upon by Westfield and analyzed in our evidentiary sufficiency analysis below is circumstantial.

Circumstantial evidence can establish an ultimate fact when the fact may be fairly and reasonably inferred from other facts in the case.  
Blount
, 910 S.W.2d at 933.  A jury may not infer an ultimate fact from meager circumstantial evidence that could give rise to any number of inferences, none more probable than another.  
Hammerly Oaks, Inc. v. Edwards
, 958 S.W.2d 387, 392 (Tex. 1997).  In cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact’s existence or non-existence.  
Marathon Corp. v. Pitzner
, 106 S.W.3d 724, 729 (Tex. 2003).  A vital fact may not be established by piling inference upon inference.  
Id
.
(footnote: 1)

Westfield argues that the following evidence constitutes sufficient evidence of CGS’s delays and liquidated damages: Curtis Green, CGS’s vice president, made a comment to Anne Stith, Westfield’s bond claim counsel, in October 2003 that CGS was responsible for 98% of the remaining work and that the work would be complete in two to three months; CGS submitted a payment bond claim for work performed in July and August 2004; the City assessed eighty days of liquidated damages against SRO, and CGS’s contract with the City provides that CGS shall be liable for any damages for delay sustained by SRO caused directly or indirectly by CGS; CGS began work on the project on day 146 of the 316 day project; CGS’s work on the project was not completed until after the scheduled completion date; certain items on a “Final Inspection Punch List” were not yet completed by CGS in the summer of 2004; and 396 days had been charged on the project with eighty days of liquidated damages charged to SRO.  All of this is slight circumstantial evidence, none of which provides a reasonable basis for inferring that CGS did not timely perform its work and caused the City to assess liquidated damages against SRO for the delayed completion of the job.  
See Marathon Corp.
, 106 S.W.3d at 729.  Inferring that CGS did not timely perform its work and that the City assessed damages against SRO for delays caused by CGS based on the evidence above would have the effect of allowing a fact finder to make such findings solely because the subcontractor began working at some point after the project had begun, because the subcontractor did not finish according to a schedule that had changed one or more times, or because there was 
some 
delay associated with the project.  This inference wholly ignores the realities associated with a large-scale construction project—that change orders to the project are entered, that schedules for completing portions of the project are altered, that contractors go out of business, and that other unexpected issues sometimes arise unrelated to whether a subcontractor performs “timely.”  Consequently, 
“something else” must be found in the record to corroborate the probability of the challenged fact findings’ existence, but there is nothing, primarily because the trial court excluded Westfield’s evidence of delays and liquidated damages
 attributable to CGS.  
See id
. 

There is additional evidence worth considering.  Green testified that there were certain days that CGS did not appear on the job after CGS had begun working on its portion of the project because SRO had not completed all of its work, including “grading” and correctly installing “mass columns.”  He also testified that there were “a few times” that CGS did not go out on the project because it had not been paid.  But once again, it is not a reasonable inference that CGS failed to timely perform its work and caused the City to assess liquidated damages against SRO for the delayed completion of the project in the amount of $15,000 based on Green’s testimony; there is not a “logical bridge between the proffered evidence and the necessary fact.”  
See Lozano
, 52 S.W.3d at 152.

Stith testified about her handling of CGS’s payment bond claims.  In explaining why Westfield had not paid CGS’s retainage claim, Stith reasoned that Westfield had not been paid by the City until August 2005 and that “[w]hen it was released from the City, there was a $50,800 back charge for liquidated damages, and those liquidated damages we believed were attributable to Green Scaping’s work.”  Somewhat different than the evidence above, Stith’s conclusory statement is evidence of exactly what it states and nothing more, that Westfield thought CGS was responsible for liquidated damages.  It is not evidence demonstrating that CGS did not timely perform its work, it is not evidence demonstrating that CGS (by failing to timely perform its work) caused the City to assess liquidated damages against SRO for the delayed completion of the project, and it is not evidence demonstrating that CGS is liable for liquidated damages in the amount of $15,000.  Findings of fact twenty-eight and twenty-nine cannot be reasonably inferred from this portion of Stith’s testimony, 
and her testimony does not provide the evidentiary corroboration that the evidence detailed above is lacking
.  Consequently, her testimony
 does not support the trial court’s twenty-eighth and twenty-ninth fact findings.

We hold that the evidence underlying the trial court’s twenty-eighth and twenty-ninth findings of fact is so weak as to do nothing more than create a mere surmise or suspicion of the fact findings’ existence; it is consequently no more than a scintilla of evidence.  
See Kindred
, 650 S.W.2d at 63; 
see also Blount
, 910 S.W.2d at 933
.
  Accordingly, the evidence is legally insufficient to support the trial court’s twenty-eighth and twenty-ninth findings of fact.  Having determined that the evidence is legally insufficient to support the challenged fact findings, we need not consider CGS’s factual sufficiency claim or its argument that the trial court erred by granting Westfield’s post-trial motion to amend its pleadings
.  
See 
Tex. R. App. P.
 47.1.  We sustain CGS’s first issue.

C. Timeliness Of Payment Bond Claim

In its second issue, Westfield argues that the evidence is legally and factually insufficient to support the trial court’s findings awarding CGS $7,867.74.  It contends that CGS failed to timely file the September 28, 2004 payment bond claim in which it requested the $7,867.74 payment for work performed during July and August 2004 because CGS performed the same or similar work “prior to July 2004.”

A governmental entity that enters into a public works contract with a general contractor must under certain circumstances require the contractor to execute performance and payment bonds before work begins.  
Tex. Gov’t Code Ann.
 § 2253.021(a) (Vernon Supp. 2007).  The purpose of the payment bond is to protect claimants who provide labor or materials in the construction of public works because public property is protected from forced sale and therefore may not be made the subject of a mechanic’s lien.  
Redland Ins. Co. v. Sw. Stainless, L.P.
, 181 S.W.3d 509, 511 (Tex. App.—Fort Worth 2005, no pet.).  “To recover in a suit under Section 2253.073 on a payment bond for a claim for payment for public work labor performed or public work material delivered, a payment bond beneficiary must mail to the prime contractor and the surety written notice of the claim.”  
Tex. Gov’t Code Ann.
 § 2253.041(a) (Vernon 2000)
.  “The notice must be mailed on or before the fifteenth day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.”  
Id
. § 2253.041(b).  Although the statutes providing for payment bonds and the procedures for making payment bond claims are to be liberally construed, section 2253.041 is a “substantive condition precedent to the existence of the cause of action.”  
See Redland
, 181 S.W.3d at 512; 
Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co., Inc.
, 170 S.W.3d 144, 147 (Tex. App.—San Antonio 2005, pet. denied); 
Bunch Elec. Co. v. Tex-Craft Builders, Inc.
, 480 S.W.2d 42, 45 (Tex. Civ. App.—Tyler 1972, no writ).

Here, Green testified that $7,867.74 of CGS’s claim on the payment bond was for work performed in July and August 2004.  CGS had initially performed the work at some point before July and August 2004, but an inspector rejected the work, causing CGS to re-do the work.  Green recounted that the City “did not pay for it [the work] during that time period until the new replacement was done.”  The bond claim that CGS submitted for work performed in July and August 2004 is dated September 28, 2004.

The record does not disclose when CGS performed the earlier, unacceptable work that Westfield argues triggered the section 2253.041(b)-deadline for submitting the payment bond claim, nor does it disclose exactly when CGS performed the work in July 2004
.  Nonetheless, assuming that CGS performed the work at the earliest possible point in July 2004 (July 1, 2004), CGS’s September 28, 2004 payment bond claim was timely because CGS submitted it on or before the fifteenth day of the third month after the month in which, according to the plain language of the statute, claimed labor “was performed” or claimed material “was delivered” by CGS.  
See 
Tex. Gov’t Code Ann.
 § 2253.041(b).
(footnote: 2)  Westfield does not argue that CGS did not perform the July and August 2004 work
.  Consequently, to the extent Westfield argues that CGS’s September 28, 2004 payment bond claim was untimely, the evidence is legally and factually sufficient to support the trial court’s findings of fact numbered twenty-seven, thirty, thirty-one, thirty-four, and thirty-nine(b).  
See Martinez
, 977 S.W.2d at 334; 
Garza
, 395 S.W.2d at 823.
  The trial court’s twelfth conclusion of law is not erroneous to the extent Westfield argues that the September 28, 2004 payment bond claim was untimely.  We overrule Westfield’s second issue.

IV.  Attorney’s Fees

In its second issue, CGS argues that the trial court abused its discretion by not awarding it reasonable attorney’s fees.  CGS contends that, as a successful litigant, it is entitled to attorney’s fees pursuant to section 38.001 of the civil practice and remedies code.  Westfield responds that section 2253.074 of the government code, which allows a trial court to award attorney’s fees as it deems equitable, controls the instant case and that the trial court did not abuse its discretion by not awarding CGS attorney’s fees.  We agree with Westfield.

The supreme court has considered the issue of competing statutes allowing for the recovery of attorney’s fees in the context of a case involving a beneficiary suing to recover under a payment bond claim.  
See New Amsterdam Cas. Co. v. Tex. Indus., Inc.
, 414 S.W.2d 914, 915–16 (Tex. 1967).  In 
New Amsterdam
, the trial court had granted summary judgment against the surety and in favor of the beneficiary on a payment bond claim.  
Id
. at 914.  The trial court awarded the beneficiary attorney’s fees even though article 5160, section 2253's predecessor, did not allow for the recovery of attorney’s fees at the time.  
Id
. at 914–15.  The surety argued that the attorney’s fees were nonetheless sustainable under article 2226, the progenitor of chapter 38 of the civil practice and remedies code.  
Id
. at 916.  But the court disagreed, reasoning as follows:

[A]rticle 2226 has no application to the claim of an unpaid materialman against the surety on an Article 5160 payment bond.  The claim and ensuing suit are grounded entirely on the surety obligation. . . .  Respondent forcefully argues that Article 2226 can be extended by implication to include the claim against the surety by reading this statute with Article 5160 which was enacted for the purpose of guaranteeing full and prompt payment to labor and material claimants on public works projects.  But we cannot thus supply by implication the necessary statutory basis for an award of attorney’s fees.  Such must be found in the terms of the legislative enactment.

Id
.  (citations omitted).  The supreme court reversed the award of attorney’s fees, declining to sustain the award under article 2226.
(footnote: 3)
 Here, section 2253.074 now expressly allows for an award of attorney’s fees in a proceeding to enforce a payment bond claim.  
Tex. Gov’t Code Ann.
 § 2253.074 (Vernon 2000).  Like the proceedings in 
New Amsterdam
, CGS’s “claim and ensuing suit are grounded entirely on the surety obligation.”  
New Amsterdam
, 414 S.W.2d at 916.
  
Consequently, we construe the trial court’s decision not to award CGS attorney’s fees pursuant to the terms of section 2253.074 of the government code, not chapter 38 of the civil practice and remedies code.

CGS argues that the trial court could not have refused to award CGS any attorney’s fees because Westfield failed to controvert the reasonableness of the fees.  The supreme court has held that when a statute provides that the trial court “may award” attorney’s fees, the trial court has “discretion in deciding whether to award attorney fees 
or not
.”  
Bocquet v. Herring
, 972 S.W.2d 19, 20 (Tex. 1998) (emphasis added).  Conversely, “[s]tatutes providing that a party ‘may recover,’ ‘shall be awarded,’ or ‘is entitled to’ attorney fees are not discretionary.”  
Id
.  For example, chapter 38 provides that a person “may recover” attorneys fees.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001 (Vernon 1997).  Thus, although a trial court has the discretion to set the amount of attorney’s fees, it does not have the discretion to completely deny attorney’s fees if they are proper under the circumstances.
  Hoeffner, Bilek & Eidman, L.L.P. v. Guerra
, No. 13-01-00503-CV, 2004 WL 1171044, at *12 (Tex. App.—Corpus Christi May 27, 2004, pet. denied) (mem. op.).  Here, section 2253.074 states, “A court 
may award 
costs and reasonable attorney fees that are equitable in a proceeding to enforce a claim on a payment bond or to declare that any part of a claim is invalid.”  
Tex. Gov’t Code Ann. 
§ 2253.074. (emphasis added).  Because the trial court “may award” attorney’s fees that are equitable, the trial court had the discretion to award attorney’s fees 
or not
.  
See Bocquet
, 972 S.W.2d at 20; 
S.A. Maxwell Co. v. R.C. Small & Assocs., Inc.
, 873 S.W.2d 447, 456 (Tex. App.—Dallas 1994, writ denied) (“[Section 2253] does not mandate an award of attorney’s fees to the prevailing party.  In fact, neither party in a McGregor Act proceeding is entitled to an award as a matter of right.”).

We review a trial court’s award of attorney’s fees under section 2253.074 for an abuse of discretion.  
S.A. Maxwell
, 873 S.W.2d at 456.  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  
Downer v. Aquamarine Operators, Inc., 
701 S.W.2d 
238, 241–42 (Tex. 1985).

Finding of fact twenty-four, which is not challenged, states as follows:

No work or materials as originally required by the City under line 23 of the Contract was performed or provided by CGS.  The rock salt finish 5 concrete panels with engraving were not provided by CGS.  When CGS submitted its sixth claim for payment, CGS knew that it had not performed the work for the now deleted line 23, yet CGS submitted the claim seeking payment for work not performed.  CGS knowingly submitted an invalid claim for work not performed under line item 23.

Part of finding of fact thirty-six provides as follows:

Additionally CGS’ claim for attorney fees related to its claim for work performed under line item 23 was not reasonable and necessary since the Court has found that no work as required under line item 23 was performed by CGS; the Court finds that a majority, if not most, of the portion of CGS’ attorney fees were related to this claim alone. . . .  For these reasons, the Court does not award to CGS, nor does it find that it is entitled, to a recovery of its attorneys fees.

Considering that section 2253.074 allows a trial court to award reasonable attorney’s fees “that are equitable,” the trial court could have concluded that it would not have been equitable to award CGS attorney’s fees because CGS “knowingly submitted an invalid claim for work not performed under line item 23,” to which “a majority, if not most, of the portion of CGS’ attorney fees were related to.”  Consequently, we cannot say that the trial court’s decision not to award CGS attorney’s fees was arbitrary or unreasonable and, therefore, an abuse of discretion.  
See Downer
, 701 S.W.2d at 241–42.  We overrule CGS’s second issue.

V.  Offsetting Monies Paid to Greenscape Pump

In its first issue, Westfield argues that the trial court erred by failing to offset CGS’s award by an amount equal to Greenscape Pump’s award. Considering that Greenscape Pump’s claim was for retainage due under its contract with CGS and that Westfield—not CGS—paid Greenscape Pump, Westfield argues that it is equitably subrogated to Greenscape Pump’s rights against CGS.

When equitable subrogation is an issue, each case is usually controlled by its own facts.  
Providence Inst. for Sav. v. Sims
, 441 S.W.2d 516, 519 (Tex. 1969); 
Farm Credit Bank of Tex. v. Ogden
, 886 S.W.2d 305, 310 (Tex. App.—Houston [1st Dist.] 1994, no writ).  The doctrine allows a party who pays the debt of another to put on the released creditor’s shoes and collect reimbursement.  
Drilltec Techs., Inc. v. Remp
, 64 S.W.3d 212, 216 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Subrogation is more widely known in the context of insurance companies seeking subrogation from their insureds for having involuntarily, under a contract of indemnity, paid a debt for which another is liable.  
Argonaut Ins. Co. v. Allstate Ins. Co.
, 869 S.W.2d 537, 541–42 (Tex. App.—Corpus Christi 1993, writ denied).  The underlying justification for such a subrogation suit is to prevent the insured from receiving a double recovery.  
Id
.  However, the doctrine is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter.  
Id
.

CGS’s contract with Greenscape Pump requires CGS to pay Greenscape Pump’s retainage only after CGS received its retainage under its contract with SRO.  Westfield did not pay CGS its retainage, so under the terms of the contract, CGS did not pay Greenscape Pump its retainage.  Instead of suing CGS for the amount owed, Greenscape Pump sued Westfield and prevailed
.  
See 
Tex. Gov’t Code Ann.
 § 2253.073(a) (Vernon 2000) (
“A payment bond beneficiary who has provided public work labor or material under a public work contract for which a payment bond is furnished under this chapter may sue the principal or surety, jointly or severally, on the payment bond if the claim is not paid before” a certain time.)
.

There is nothing in the record to indicate that the amount recovered by CGS against Westfield for retainage excluded the amount of retainage owed by CGS to Greenscape Pump, especially considering that CGS did not have to pay Greenscape Pump its retainage until CGS had been paid its retainage and that, at the time of trial, CGS had not paid Greenscape Pump its retainage.  
Westfield’s subsequent satisfaction of Greenscape Pump’s judgment simultaneously eliminated the retainage balance owed by CGS to Greenscape Pump under the CGS—Greenscape Pump contract.  Because Westfield paid Greenscape Pump an amount that CGS was contractually bound to pay to Greenscape Pump, CGS’s recovery against Westfield is $5,561.25 too much.

Directing us to section 2253.073(a)’s language allowing a payment bond beneficiary to sue the principal or surety jointly or severally on a payment bond claim, CGS responds that an offset would be inappropriate because Greenscape Pump had the option of recovering from Westfield.  
See id
.  But Greenscape Pump’s ability to recover from Westfield instead of CGS or the principal is irrelevant for determining whether Westfield is entitled to offset a portion of CGS’s recovery.  And Westfield’s contention that it is entitled to deduct $44,183.49
, no
t just $5,561.25, from CGS’s award against Westfield 
is likewise unpersuasive; Westfield is entitled to an offset of only $5,561.25, an amount representing Greenscape Pump’s claim against Westfield, excluding interest, reasonable attorneys’ fees, and court costs.

Accordingly, we sustain Westfield’s first issue to the extent it argues that the trial court erred by failing to offset CGS’s award by an amount equal to Greenscape Pump’s recovery against Westfield of $5,561.25.

VI.  Conclusion

Having sustained CGS’s first issue, we reverse the trial court’s award of liquidated damages to Westfield in the amount of $15,000.  Having sustained Westfield’s first issue in part, Westfield is entitled to offset the amount recovered by CGS in the amount of $5,561.25.  We render judgment that CGS recover the amount of $50,445.17 from Westfield.
(footnote: 4)  Having overruled CGS’s and Westfield’s second issues, we affirm the remainder of the trial court’s judgment.

       
 DIXON W. HOLMAN

JUSTICE

PANEL A:  HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: February 21, 2008 

FOOTNOTES
1:
In 
Lozano v. Lozano
, Chief Justice Philips 
explained the equal inference rule’s application to circumstantial evidence in light of the no evidence standard of review as follows:

The equal inference rule provides that a jury may not reasonably infer an ultimate fact from meager circumstantial evidence “which could give rise to any number of inferences, none more probable than another.”  Thus, in cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact’s existence or non-existence.

. . . .

Properly applied, the equal inference rule is but a species of the no evidence rule, emphasizing that when the circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal effect no evidence.  But circumstantial evidence is not legally insufficient merely because more than one reasonable inference may be drawn from it.  If circumstantial evidence will support more than one reasonable inference, it is for the jury to decide which is more reasonable, subject only to review by the trial court and the court of appeals to assure that such evidence is factually sufficient.

. . . . 

Circumstantial evidence may be used to establish any material fact, but it must transcend mere suspicion.  The material fact must be reasonably inferred from the known circumstances.

. . . .

[S]uspicion and conjecture are not evidence.  Legally sufficient circumstantial evidence requires a logical bridge between the proffered evidence and the necessary fact.

52 S.W.3d 141, 148–52 (Tex. 2001) (Philips, C.J., concurring and dissenting).

2:
When statutory language is clear and unambiguous, a statute should be given its plain meaning.  
Employers Cas. Co. v. Dyess
, 957 S.W.2d 884, 889 (Tex. App.—Amarillo 1997, writ denied).

3:
We do not read the court’s subsequent decision in 
Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No.1
, 908 S.W.2d 415, 427–28 & n.11 (Tex. 1995), as permitting the recovery of attorney’s fees under chapter 38 because that case dealt with recovery under a performance bond, not a payment bond, which the court expressly noted and distinguished in footnote eleven.

4:
This amount represents the amount of the original judgment awarded CGS ($41,006.42) plus $15,000 less $5,561.25.  This amount excludes any amounts for prejudgment and postjudgment interest as set forth in the original judgment.