**Donald BRANSOM, Appellant,**

v.

**STANDARD HARDWARE, INC., Appellee.**

**No. 2–93–044–CV.**

Court of Appeals of Texas, Fort Worth.

April 20, 1994.

Rehearing Denied May 25, 1994.

---

Richard E. Hill, Bedford, for appellant.

Tim G. Sralla, Fielding, Barrett & Taylor, L.L.P., Fort Worth, for appellee.

Before DAY, HICKS and FARRAR, JJ.

## OPINION

FARRAR, Justice.

Appellant, Donald Bransom, appeals from the trial court's judgment for fraud. The case was tried to the court which issued findings of fact and conclusions of law and entered judgment against Bransom for $479,-348.33 actual damages, $500,000.00 exemplary damages, and $221,025.93 pre-judgment interest. In addition, the court imposed a constructive trust on the proceeds of the marital residence and on certain life insurance policies.

We affirm in part, reverse in part and reform the judgment.

In ten points of error, appellant contends the trial court erred in granting judgment in favor of appellee, Standard Hardware, Inc., asserting there is insufficient evidence to support the trial court's judgment of $479,-348.33 in actual damages. Further, appellant complains the evidence is insufficient to sustain the trial court's findings of fact and conclusions of law that appellant had actual or constructive knowledge of the fraud, participated in the fraud, or acted intentionally and out of such ill will, bad or evil motive, or out of such gross indifference or reckless disregard for the rights of appellee to be willful and wanton and to support the judgment of $500,000.00 in exemplary damages. Appellant also asserts the trial court erred in granting a constructive trust on the proceeds of the sale of appellant's homestead and incorrectly calculated pre-judgment interest.

Appellee responds to each of these points, asserting the evidence of actual and constructive fraud is sufficient to sustain the trial court's judgment in the amount of $479,-348.33 actual damages and $500,000.00 punitive damages, and further contends the judg-

ment for actual damages must be affirmed because the trial court's finding of unjust enrichment is unchallenged and supports the judgment of $479,348.33.

The record shows appellant's wife, Angela Bransom, was an officer and director of Standard and occupied a fiduciary position as appellee's controller and bookkeeper from approximately 1986 to September 15, 1991. During this time, Angela was in control of Standard's financial affairs, including its bank accounts, accounts receivable and payable, and salary records. Beginning May 18, 1988, Angela began embezzling funds from two bank accounts owned by Standard Hardware. During the thirty-nine months that followed, Angela converted a total of $479,-348.33. The trial court's findings of fact and conclusions of law that Angela fraudulently converted these funds and its judgment, awarding $479,348.33 in actual damages and $2,500,000.00 in exemplary damages against Angela, is not the subject of this appeal. The subject of this appeal is the trial court's judgment regarding Angela's husband, Donald Bransom.

In points of error one through six and eight, appellant contends the trial court erred in granting judgment in favor of appellee in that there was insufficient evidence to support the following findings of facts and conclusions of law:

Finding of Fact 75: Appellant knew the approximate income he and his wife earned at all times relevant and was aware their expenditures far exceeded that reasonably affordable on their legitimate income;

Finding of Fact 76: Appellant had actual and constructive knowledge that his wife was fraudulently transferring sums of money out of appellee's accounts and applying those funds to the benefit of appellant;

Finding of Fact 81 and Conclusion of Law 15: Appellant participated in the fraud by knowingly concealing and failing to disclose the existence of the fraud, knowingly and willfully receiving the benefit of the fraud thereby damaging appellee, and enti-

tling appellee to judgment, in the amount of at least $479,348.33;

Conclusions of Law 19 and 20: Appellant acted intentionally and out of such ill will, bad or evil motive or out of such gross indifference or reckless regard for the rights of appellee as to be wanton or willful, entitling appellee to $500,000.00 in exemplary damages.

■ While appellant phrases his points of error as factual insufficiency contentions, the text of his argument asserts no evidence of any wrongdoing was presented at trial. The rules of appellate procedure guide this court to construe an appellant's contentions liberally providing his brief substantially complies with the rules if such a construction serves the interest of justice. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986) (opinion on reh'g); Tex.R.App.P. 74(p). In civil cases, complaints that the evidence is legally or factually insufficient to support a particular finding, and challenges directed against any conclusions of law based upon the finding, may be combined under a single point of error raising both contentions if the record references and the argument sufficiently direct the court's attention to the nature of the complaint regarding the finding or legal conclusion. Tex.R.App.P. 74(d). Accordingly, we construe appellant's insufficiency points of error coupled with the no evidence arguments to raise both legal and factual sufficiency contentions.

■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *Gregory v. Sunbelt Sav., F.S.B.,* 835 S.W.2d 155, 158 (Tex.App.—Dallas 1992, writ denied); *Daca, Inc. v. Commonwealth Land Title Ins. Co.,* 822 S.W.2d 360, 362 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The same standards are applied in reviewing the legal or factual sufficiency of the evidence supporting a trial court's finding as are applied to review a jury's finding. *Daca,* 822 S.W.2d at 362.

■ In determining a "no evidence" point, we are to consider only the evidence and

inferences which tend to support the trial court's findings and disregard all evidence and inferences to the contrary. *See Sherman v. First National Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex. 1985). If there is any evidence of probative force to support the finding, the finding must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.— Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960).

■ Only if legal sufficiency is found do we address the factual sufficiency to support the verdict. The party attacking the factual sufficiency of an adverse finding, on which he does not have the burden of proof, must demonstrate the evidence is so weak or the finding is so contrary to the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We must consider, examine and weigh all the evidence, both supporting and contrary, in making this determination. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). The Supreme Court of Texas has cautioned the courts of appeals in factual insufficiency cases to detail the relevant evidence and clearly state "why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Pool,* 715 S.W.2d at 635. Further, the Supreme Court has instructed the appellate courts to articulate why the contrary evidence greatly outweighs the evidence supporting the trial court's findings. *See id.; see also Herbert v. Herbert,* 754 S.W.2d 141 (Tex.1988).

■ The elements of actionable fraud are: 1) a material misrepresentation was made; 2) the representation was false; 3) when the speaker made the statement, he knew it was false or he made it recklessly without any knowledge of its truth; 4) the speaker made the statement with the intention that it be acted upon by the party; 5) the party actually acted in reliance upon it; and 6) the party suffered injury. *Fidelity & Guar. Ins. Underwriters, Inc. v. Saenz,* 865 S.W.2d 103, 110 (Tex.App.—Corpus Christi 1993, writ denied). A party in interest may become liable by mere silent acquiescence and partaking of the benefits of the fraud. *Corpus Christi Teachers C.U. v. Hernandez,* 814 S.W.2d 195, 198 (Tex.App.—San Antonio 1991, no writ). Where one is seeking to prove knowledge of a party in interest, the fraud is almost always proven by circumstantial evidence from which inferences may be drawn from the facts proved. *Id.* However, the facts must be sufficient to sustain the inference. *Id.*

■ At trial, Standard produced no evidence to prove appellant participated in the fraud. No checks were proven to have been endorsed by appellant. No deposits bore his signature. Standard produced several checks, drawn on Standard's account, payable to and endorsed by "D. Bransom." These checks were deposited into an account entitled "Donald Bransom special account." Standard attempted to characterize this account as appellant's separate account over which appellant maintained sole control. However, appellee did not present any evidence to show the "D. Bransom" signatures were in fact appellant's signature. In fact, the "D. Bransom" signature is distinctly different than the appellant's signature on other contracts and checks contained elsewhere in the record, and remarkably similar to Angela's script. Numerous transactions occurred on this special account; however, all were

expressly authorized by Angela or bore the unverified signature of D. Bransom. No evidence was introduced to show appellant ever managed, controlled or transacted any business on this account or even knew the account existed.

Moreover, Standard produced no more than a mere scintilla of evidence from which the trial court could infer fraudulent intent. Standard maintains it is probative that appellant did not come forward to protest his innocence when he first learned of this law-suit. Instead, he closed the joint checking account and gave the funds to his wife. While appellant admitted at trial to closing an account and giving the funds to his wife, Standard has not directed this court's attention to the documents showing what account was closed; nor have we been directed to any testimony from the bank officer who handled the transaction.

Appellee also asserts fraudulent intent was exhibited when appellant opened a separate account in another bank following the filing of this lawsuit which included a request for a Temporary Restraining Order restraining Angela from withdrawing any funds from her accounts without court approval. This proves an intent to access funds for daily living expenses and nothing more. Moreover, no Standard funds were traced to this account. Appellant testified the initial deposit in the separate account was derived from rent checks collected from the rental properties. Standard has directed us to no controverting proof.

Furthermore, appellee produced no evidence that appellant had actual knowledge of the fraud and knowingly enjoyed its benefits. The vast majority of the stolen funds were deposited by Angela into her separate accounts. Funds, totalling just under $24,-500.00 were deposited into the couple's joint checking account over a three and one half year period. An additional $20,000.00 was deposited into Donald Bransom's special account already discussed. However, appellant testified that Angela managed the family's finances and while he wrote some checks on

their joint accounts, he did not oversee, control or reconcile those accounts. Standard has produced no controverting proof.

■ Standard further asserts the Bransoms lived so far above their means that constructive knowledge could be imputed against appellant. Standard refers to the purchases of an expensive home, a luxury car, a boat, motor home, jewelry, Hummel figures, and large amounts of life insurance policies and annuities. However, the facts as contained in the record belie appellee's characterization of a life style so lavish as to be conspicuously beyond the couple's legitimate means. A more precise reference to the record would have greatly aided this court in its consideration of the evidence. In our examination of the record, we have ascertained the following:

Appellant was employed as an electrical technician, and Angela was the treasurer and bookkeeper of Standard Hardware. The Bransoms averaged $70,000.00 per year in salary during 1988 and 1989. They owned four rent houses which produced rental income each year and tax benefits. The Bransoms paid an average of $6,500.00 in income taxes for 1988 and 1989.

The Bransoms purchased a home in 1986, two years before the misappropriation began. They paid $165,000.00 for the house, and another house was sold that year for $85,-000.00. The scheduled monthly mortgage payment for the Bransom's home during the relevant period was: $1,261.00 in 1989; $1,283.00 in 1990; $1,329.00 in 1991. Beginning in December 1989, extra payments to principal were made each month either from the Bransom's joint checking account or by money order. These extra payments averaged approximately $600.00 per month. A total of $37,688.23 was paid on the mortgage during the period 12–14–89 to 9–15–91.

In 1988, the Bransoms purchased a half-interest in a mobile home. Angela authorized two cashiers checks on appellant's "special account" totalling $7,475.00 in payment for the entire purchase price and was later

reimbursed by the other half-interest owner, Standard's CEO.

Angela purchased a $34,000.00 Lexus automobile in 1990. She traded in an Oldsmobile Toranado and paid a $10,000.00 down payment.

In 1991, appellant purchased a Mitsubishi automobile for his daughter. The record contains a copy of the check for $12,834.00, drawn on the Bransom's joint account, signed by appellant.

At some time, appellant purchased a bass boat. The Bransom's homeowner's policy, dated 1992, shows the Bransoms owned $41,-700.00 in jewelry and $5,600.00 in Hummel figures. Angela also owned a fur coat, valued under $800.00. Appellant owned a pickup truck. There is no evidence in the record to show when these items were acquired or the amount paid for each item.

At the rate of approximately one or two per year, various whole life insurance policies and annuities were added to the family's financial portfolio. With the exception of one policy, each of the policies were purchased before the relevant period began. The record contained copies of the following policies:

$25,000.00 and $50,000.00 limits on the daughter, purchased February 24, 1986 and February 2, 1983;

$150,000.00 on appellant, purchased August 31, 1987;

$150,000.00 on Angela, purchased October 13, 1987;

$50,000.00 on the son, purchased June 20, 1988.

These policies were paid on either an annual or monthly basis; and after June 20, 1988 the premiums totalled approximately $3700.00 annually. We fail to see the relevancy of those policies purchased before the embezzlement began other than any payments made after May 18, 1988.

A total of five annuities were purchased, four of which were purchased prior to the commencement of the fraud. These include:

an annuity with a $2,000.00 minimum annual premium purchased by appellant, March 27, 1986; and a second annuity for appellant, also with a $2,000.00 minimum annual premium purchased April 4, 1985. Angela also purchased an annuity in 1985 and 1986, each with a minimum $2,000.00 annual premium. The only annuity purchased during the relevant period was one with a one time premium of $3,000.00, purchased by Angela in 1990. Appellee has not directed this court's attention to evidence of the actual payments made. No evidence was introduced to show any payments were paid, let alone payments exceeding the scheduled minimum premiums.

The evidence most likely to be dispositive regarding appellant's knowledge of Angela's fraud is $159,000.00 in charges made by Angela to her VISA account. However, Standard has offered no evidence, either in the form of statements or receipts, regarding what tangible items were purchased from which constructive knowledge could be inferred.

When viewed as a whole, we find no evidence to establish the Bransoms were living so beyond their legitimate means as to establish appellant's constructive knowledge of Angela's fraud.

■ Further, appellee's contention that appellant maintained a fiduciary or confidential relationship with Standard, thereby giving rise to constructive fraud, was neither pled nor proved below. It is not preserved for our consideration.

We conclude the evidence recited above is legally insufficient to support the trial court's finding that appellant: knew the family's expenditures far exceeded that reasonably affordable on his and his wife's legitimate income; participated in the fraud; had actual or constructive knowledge of the fraud; and knowingly and willfully received the benefits of the fraud. Accordingly, we reverse the judgment of the trial court and render a take-nothing judgment for actual damages on appellee's fraud cause of action. TEX. R.APP.P. 80(b) and 81(b).

■ However, we note the trial court's judgment is expressly based on two causes of action, fraud and unjust enrichment. The trial court specifically found appellant was unjustly enriched in an amount of at least $479,348.33. Appellee contends the judgment for actual damages arising from unjust enrichment must be affirmed because appellant has presented no point of error challenging the trial court's judgment awarding and the underlying findings of fact and conclusions of law. We agree.

■ Unjust enrichment, as an independent, unchallenged theory of recovery, supports the trial court's judgment. An action for unjust enrichment is based upon the equitable principle that a person receiving benefits which were unjust for him to retain ought to make restitution. *Corpus Christi v. S.S. Smith & S. Masonry*, 736 S.W.2d 247, 250 (Tex.App.—Corpus Christi 1987, writ denied). Recovery is based on fundamental principles of justice or equity and good conscience which give rise to an implied or quasi-contract to repay. *Allen v. Berrey*, 645 S.W.2d 550, 553 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). A right of recovery under unjust enrichment is essentially equitable and does not depend upon the existence of a wrong. *Fun Time Centers, Inc. v. Continental National Bank*, 517 S.W.2d 877, 884 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.).

■ Appellant has presented no point of error challenging the judgment for unjust enrichment and the underlying findings of fact and conclusions of law supporting the judgment. Point of error seven raises a broad challenge to the sufficiency of the evidence supporting actual damages in the amount of $479,348.33. However, the point of error does not raise any specific legal or factual issue and is not supported by any legal authority. Issues raised as points of error, but not specifically briefed, are waived. *Green v. Reyes*, 836 S.W.2d 203, 213 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also, Courtney v. City of Sherman*, 792 S.W.2d 135, 138 (Tex.App.—Dallas 1990, writ denied); Tex.R.App.P. 74. Moreover, the point of error does not specifically cite the finding of fact appellant seeks to challenge. An unchallenged finding of fact is binding on this court. *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Katz v. Rodriguez*, 563 S.W.2d 627, 631 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (opinion on reh'g). Therefore, we must affirm the trial court's judgment awarding $479,348.33 actual damages for unjust enrichment.

■ The mere finding of unjust enrichment does not, however, support the imposition of exemplary damages, and we sustain appellant's point of error in which he challenges the trial court's finding that he acted intentionally and out of such ill will, bad or evil motive or out of such gross indifference or reckless regard for the rights of appellee as to be wanton or willful. Exemplary damages are recoverable only after proof of fraud, malice or gross negligence or if the unlawful act, warranting actual damages, was of a wanton and malicious nature. Tex.Civ.Prac. & Rem.Code Ann. § 41.003 (Vernon Supp.1994); *McLendon v. McLendon*, 862 S.W.2d 662, 671 (Tex.App.—Dallas 1993, no writ); *Villarreal v. Elizondo*, 831 S.W.2d 474, 478 (Tex.App.—Corpus Christi 1992, writ requested); *Transfer Products v. TexPar Energy*, 788 S.W.2d 713, 715 (Tex. App.—Corpus Christi 1990, no writ) (article 41.003 does not supersede common law of conversion, and exemplary damages may be awarded on finding of malice). Malice may be implied from the knowing conversion of another's property when the defendant knew or should have known he had no legal right to the property. *Transfer Products*, 788 S.W.2d at 715. However, our review of the evidence has established Standard failed to prove appellant participated in the fraud or had actual or constructive knowledge. By finding lack of constructive knowledge we are in effect stating there was insufficient evidence to establish appellant knew or should have known of the conversion. *See* Black's Law Dictionary 284 (5th ed. 1979). If one by exercise of reasonable care would have known a fact, he is deemed to have had

constructive knowledge of such fact. Moreover, the finding of unjust enrichment does not in itself establish malice in that all that is required to sustain a finding of unjust enrichment is the mere passive acceptance of benefits. *See e.g., Fun Time Centers, Inc.*, 517 S.W.2d at 884. Accordingly, we strike the award of exemplary damages.

Nonetheless, we affirm the imposition of a constructive trust on the proceeds of the sale of appellant's homestead. These funds were ordered into the court's registry pending the outcome of the litigation, and we assume, without deciding, the funds retained their homestead characterization. Constructive trusts, being remedial in nature, have the very broad function of redressing wrongs or unjust enrichment in accordance with basic principles of equity and justice. *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex.1974). There is no unyielding formula to which a court of equity is bound; the equity of the transaction will shape the relief granted. *Id.* As appellant concedes, the homestead protection afforded by the Texas Constitution was never intended to protect stolen funds. *Pace v. McEwen*, 617 S.W.2d 816, 818 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 29 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (Akin, J. dissenting); *Baucum v. Texan Oil Corporation*, 423 S.W.2d 434, 442 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.); *see also, Bush v. Gaffney*, 84 S.W.2d 759, 763 (Tex.Civ.App.—San Antonio 1935, no writ); Tex. Const. art. 16, § 50. Stolen funds used for the purchase of a homestead or improvement of an existing homestead can never acquire homestead rights as they are held in trust for the rightful owners of the funds. *First State Bank v. Zelesky*, 262 S.W. 190, 192 (Tex.Civ.App.—Galveston 1924, no writ); *Smith v. Green*, 243 S.W. 1006, 1008 (Tex.Civ.App.—Amarillo 1922, writ ref'd). Further, it is immaterial that appellant was without knowledge or fault with respect to his wife's wrongdoing. *First State Bank*, 262 S.W. at 192; *Smith*,

243 S.W. at 1008. Appellant cites no authority for the proposition that we should distinguish between funds used to purchase outright or improve a homestead and those used to pay for the home incrementally over a period of time. We decline to make the distinction. *See Pace*, 617 S.W.2d at 818. Such a distinction can only lead to unjust, inequitable and absurd results. *See Curtis Sharp Custom Homes, Inc.*, 701 S.W.2d at 31 (Akin, J. dissenting).

We respectfully note our holding is in contradiction to that of the Dallas Court of Appeals which held the Texas Constitution homestead protection barred the foreclosure of a judicial equitable lien to recover embezzled funds. *Curtis Sharp Custom Homes, Inc.*, 701 S.W.2d at 28; *contra Pace*, 617 S.W.2d at 817–18. The court declared the lien void because the mandatory protection provided by the constitution divested the trial court of subject matter jurisdiction. *Curtis Sharp Custom Homes, Inc.*, 701 S.W.2d at 25, 28. *But see Pace*, 617 S.W.2d at 819 (trial court has jurisdiction to determine if property in question is exempt from execution as homestead property in same suit in which judgment was rendered or in new and independent suit); *Steenland v. Texas Commerce Bank, N.A.*, 648 S.W.2d 387, 390–91 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) (trial court has jurisdiction to determine to what extent homestead rights apply); *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 284 (Tex.App.—Houston [1st Dist.] 1983, no writ) (homeowner has right to jury determination to ascertain extent of his homestead protection). The court held the equitable lien to be unenforceable against the previously acquired homestead even though the court impliedly found $5,004.00 of the stolen funds had been used to improve the property. *Id.* at 24–25. We feel this is contrary to the intentions of the framers of the constitution and a distortion of the homestead protection. *See id.* at 29 (Sparling, J. concurring). *See also Baucum*, 423 S.W.2d at 442; *Smith*, 243 S.W. at 1008. The ninth

point of error is overruled.[1]

█ Finally, appellant has waived the point of error regarding the trial court's calculation of pre-judgment interest. His brief fails to cite any legal authority in support of the argument. This court notified appellant, by letter dated September 9, 1993, of this omission and provided appellant an opportunity to correct this deficiency. He has failed to do this and accordingly, his tenth point of error is waived. Tex.R.App.P. 74(f).

To conclude, we reverse and reform the trial court's judgment for the fraud cause of action and render a take-nothing judgment for actual damages, and we strike the award of punitive damages. Further, we affirm the trial court's judgment awarding $479,348.33 in actual damages arising out of unjust enrichment. In addition, we affirm the imposition of a constructive trust on the proceeds of the sale of appellant's homestead, and affirm the trial court's award of pre-judgment interest. The remainder of the trial court's judgment is unchanged.

---

1. Appellant does not complain of the imposition of the constructive trust on the life insurance policies, and we do not address that issue.