Affirmed and Memorandum Opinion filed April 26, 2005









Affirmed and Memorandum Opinion filed April 26, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00679-CV

____________

 

RDG LIMITED
PARTNERSHIP AND RDG PARTNERS, INC., Appellants

 

V.

 

GEXA CORP., Appellee

 



 

On Appeal from the County
Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 791,194

 



 

M E M O R A N D U M   O P I N I O N

Appellants, RDG Limited Partnership and
RDG Partners, Inc. (collectively, ARDG@), appeal the
judgment in favor of appellee, Gexa Corp., on its claim for unjust
enrichment.  We affirm.

                                              Factual Summary








Gexa is a Retail
Electric Provider (AREP@) that supplies
electricity to individuals and businesses. 
RDG owns an apartment complex located at 3633 Shaver in the City of
Pasadena where Jesus Fornadeo was apparently a resident.  In June 2002, Fornadeo moved to a new
apartment complex in the City of Houston. 
In preparing to move, Fornadeo executed a Residential Electricity Authorization,
under which he requested that Gexa supply electric service to his new apartment
in the City of Houston.  On the
authorization form, under APresent Contact
Information,@ Fornadeo listed his old address as the
RDG apartment at 3633 Shaver in Pasadena. 


When Gexa received the authorization, it
contacted the Electric Reliability Council of Texas (ERCOT), which oversees the
switching of electric services providers, to obtain the identifying number (AESI@ number) for the
meter located at the RDG complex, instead of the ESI for the individual meter
at Fornadeo=s new apartment in Houston.  Accordingly, rather than switching Fornadeo=s new residence to
Gexa, the error caused RDG=s entire apartment
complex at 3633 Shaver to be inadvertently switched to Gexa.  

ERCOT sent postcard notifications of the
REP switch to Fornadeo at his old address. 
Gexa, likewise, sent six invoices to Jesus Fornadeo at his old address,
for the period from June 18, 2002 through October 18, 2002.  None of the invoices were returned to Gexa or
otherwise paid.  Gexa contacted RDG about
the unpaid invoices, but RDG never paid those invoices.  

Gexa eventually brought this action
against RDG to collect the value of the electricity ($47,425.21) provided to
the apartment complex under theories of quantum meruit, unjust enrichment,
restitution, and equitable right of reimbursement.  RDG pleaded the affirmative defenses of Aunclean hands,@ failure of
condition precedent, illegality, and assumption of the risk.  RDG also sought a declaratory judgment that
Gexa changed RDG=s REP for the property in violation of
Chapter 25 of the Substantive Rules Applicable to Electric Service Providers
(the ARules@), which are
promulgated by the Public Utility Commission of Texas pursuant to Section
39.101 of the Texas Utilities Code.[1]  








RDG=s counsel wrote to
Gexa to provide Aformal notice@ that the invoices
were unauthorized charges obtained without consent and verification of
authorization in compliance with Chapter 25 of the Rules.  RDG demanded that Gexa (1) cease charging RDG
for the unauthorized charges, (2) remove the unauthorized charges from RDG=s bill, and (3)
provide RDG with all billing records reflecting the removal of the unauthorized
charges.  RDG also put Gexa Aon notice to
refrain from@ (1) filing an unfavorable credit report
against RDG on the basis of RDG=s nonpayment of
the unauthorized charges, and (2) re-billing RDG for the unauthorized
charges.  Finally, RDG demanded that Gexa
dismiss its lawsuit with prejudice.  

RDG moved for summary judgment.  The trial court denied the summary judgment
and tried the case without a jury.  The
parties stipulated the only evidence to be considered by the trial court was
(1) evidence submitted in support of RDG=s motion for
summary judgment, (2) evidence submitted in support of Gexa=s response to the
motion for summary judgment, and (3) the parties= stipulation that
Gexa=s cost for
electricity supplied to RDG=s property was $29,771.62.  

Among its findings of fact, the trial
court found that Gexa switched the REP at the apartment complex without RDG=s authorization,
but that the switch was the result of a mistake; that RDG received and made
full use of the benefits of the electricity supplied by Gexa; and while the
reasonable value of the electricity was $47,425.21, Gexa=s cost to supply
the electricity was $29,771.62.  








In its conclusions of law, the trial court
determined that Gexa did not Aslam@ RDG; RDG
passively received the benefit of electricity provided by Gexa, and it would be
unconscionable to allow RDG to retain the full benefits of the electricity at
Gexa=s expense; RDG
would be unjustly enriched if it were allowed to retain the full benefits of
the electricity provided by Gexa; and because Gexa=s mistake caused
the switching of electric service, equity does not warrant Gexa recovering
amounts that it would have otherwise charged or amounts that RDG would have
otherwise been required to pay another provider.  

The trial court determined, under
equitable principals, that Gexa was entitled to recoup the cost of providing
electricity to the apartment complex, i.e., $29,771.62, and RDG was not
entitled to recover on its counterclaim, including attorney fees, and
accordingly, awarded Gexa $29,771.62, plus pre and post-judgment interest. 

                                                     PUC
Rules

In its first issue, RDG claims the trial court erred in
granting judgment for Gexa because Section 25.481 of the Rules prohibits an REP
from collecting either unauthorized charges or charges for unauthorized
services.  Section 25.481(b)(2) provides
that prior to including any charges on a customer=s electric bill, a
REP shall, among other requirements, obtain the customer=s consent to the
product or service offered and verify such consent.  ' 25.481(b)(2).  With respect to unauthorized charges, section
25.481(c) of the Rules provide:

(1)     If
a customer=s electric bill is charged for any
product or service without proper customer consent and verification of
authorization in compliance with this section, the REP that billed the
customer, when it learns or is notified that any charge that has not been
authorized, shall promptly, but not later than 45 days thereafter:

(A)     cease
charging the customer for the unauthorized product or service;

(B)     remove
the unauthorized charge from the customer=s bill;

(C)     refund
or credit to the customer all money that has been paid by the customer for any
unauthorized charge . . . ; and

(D)     on the customer=s request, provide
the customer with all bill records under its control related to any
unauthorized charges within 15 business days after the date of the removal from
the customer=s electric bill.








RDG, Apursuant to ' 25.481(c),@ demanded that
Gexa cease charging RDG for the unauthorized charges, remove the unauthorized
charges from RDG=s bill, and provide RDG  with all billing records reflecting the
removal of the unauthorized charges. 
However, while Section 25.481(c) provides for the removal of an Aunauthorized charge,@ it is clear from
reading the entire section that it applies to an REP=s already existing
customer, not a new customer who is the subject of an unauthorized
switch.  For example, ' 25.481(a)  provides: 

After a customer has enrolled or switched to a retail
electric provider (REP), pursuant to ' 25.474 of this
title (relating to Selection or Change of Retail Electric Provider), any subsequent
services offered by the REP that will be billed on the customer=s electric bill
shall be authorized by the customer consistent with this section.  A REP may obtain authorization for an additional
product or service to appear on the bill for existing customers by
using any of the methods set forth in ' 25.474 of this
title.  

(Emphasis added).

We find that Section 25.481 is not
applicable to this case because RDG was not an existing customer of Gexa.  RDG=s first issue,
therefore, is overruled.  

In its second issue, RDG contends the
trial court erred in finding that Gexa could avoid the statutory penalty set
forth in section 25.481(c) under principles of equity.  As discussed above, section 25.481 does not
apply to unauthorized changes by a REP, but to unauthorized charges to an REP=s existing
customer.  RDG=s second issue is
also overruled.

                                            Unjust
Enrichment

In its third
issue, RDG argues that even if the trial court could properly apply equity to
avoid the statutory penalty, the evidence is legally insufficient to support
unjust enrichment.  In its fourth issue,
RDG contends the trial court erred in finding that Gexa can recover for unjust
enrichment on a finding that RDG passively received the benefit of the
electricity provided by Gexa and it would be unconscionable for RDG to retain
that benefit. 








We review the trial court=s findings of fact
for legal and factual sufficiency of the evidence by the same standards applied
in reviewing the evidence supporting a jury=s finding.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  When reviewing the
legal sufficiency of the evidence, we consider only the evidence and inferences
tending to support the trial court=s finding,
disregarding all contrary evidence and inferences.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001).  A Ano evidence@ point will be
sustained if there is no more than a scintilla of evidence to support the
finding.  Minyard Food Stores, Inc. v.
Goodman, 80 S.W.3d 573, 577 (Tex. 2002).

Unjust enrichment is not a distinct
independent cause of action, but a theory of recovery.  Mowbray v. Avery, 76 S.W.3d 663, 679
(Tex. App.CCorpus Christi 2002, pet. denied).  Unjust enrichment is based on the equitable
principle that one who receives benefits unjustly should make restitution for
those benefits.  Villarreal v. Grant
Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.CSan Antonio 2004,
pet denied); Mowbray, 76 S.W.3d at 679; Bransom v. Standard Hardware,
Inc., 874 S.W.2d 919, 927 (Tex. App.CFort Worth 1994,
writ denied).  A party may recover under
the theory of unjust enrichment when another has obtained a benefit by fraud,
duress, or the taking of an undue advantage. 
Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39,
41 (Tex. 1992).  To be entitled to
restitution under a theory of unjust enrichment, the plaintiff must show the
party sought to be charged had wrongfully secured a benefit or had passively
received one which would be unconscionable for that party to retain.  Villarreal, 136 S.W.3d at 270; Matagorda
County v. Texas Ass=n of Counties
County Gov=t Risk Mgmt. Pool, 975 S.W.2d 782,
785 (Tex. App.CCorpus Christi 1998), aff=d, 52 S.W.3d 128
(Tex. 2000).  








RDG contends that Gexa failed to present
evidence of fraud, duress, or the taking of undue advantage that would render
its retention of the benefit unconscionable. 
We disagree.  We find the evidence
shows that RDG obtained the benefit of the electricity by the taking of undue
advantage of Gexa=s mistake when it refused to pay for the
electricity.  Gexa mailed six invoices to
the address at 3633 Shaver (although addressed to Jesus Fornadeo) for the
period from June 18, 2002, through October 18, 2002, which were never returned
Gexa.  When Gexa had not received payment
for any of the invoices, Gexa=s collections
manager contacted RDG about the unpaid invoices.  An RDG employee admitted to Gexa that RDG had
not been billed for electricity by its usual providerCReliant
Energy.  While initially agreeing to pay
Gexa for the electricity, RDG ultimately refused to pay any of the invoices for
the electricity it had received and made use of, thus obtaining a benefit by
the taking of an undue advantage.

The trial court concluded that RDG
passively received the benefit of the electricity provided by Gexa, and it
would be unconscionable to allow RDG to retain the full benefits of the
electricity at Gexa=s expense. 
RDG contends this concept, i.e., that a recovery for unjust
enrichment may be supported by evidence that a defendant Apassively received
a benefit@ which it is unconscionable to retain, was
not adopted by the Texas Supreme Court in Heldenfels Brothers.[2]  Instead, according to RDG, the Heldenfels
Brothers Court adopted the following standard:  AUnjust enrichment
is not a proper remedy merely because it >might appear
expedient or generally fair that some recompense be afforded for an unfortunate
loss= to the claimant
or because the benefits to the person sought to be charged amounts to a
windfall@  832 S.W.2d at 42 (quoting Austin v. Duval,
735 S.W.2d 647, 649 (Tex. App.CAustin 1987, writ
denied)).  RDG concludes from this
holding that the supreme court disapproved sub silentio of former
jurisprudence stating that unjust enrichment can be shown by mere passive
receipt of a benefit that would be unconscionable to retain.








We fail to see any contradiction between
the two doctrines, but, instead, find they are fully compatible, and any
determination on unjust enrichment will necessarily depend upon the evidence
presented in the case.  In any event,
several courts of appeals have relied on the Apassively received@ language even
after the Texas Supreme Court decided Heldenfels Brothers.[3]  Moreover, the supreme court in Heldenfels
Brothers did not address the Apassively retained@ language or
otherwise disapprove or overrule any case law applying that language in unjust
enrichment analysis.  Therefore, we
conclude the Apassively retained@ language is still
viable.  RDG=s third issue is
overruled.

RDG also complains that there is no
evidence that Gexa had clean hands because Gexa=s conduct violated
the Rules and the public policy behind the Rules prohibiting the collection of
unauthorized charges.  The party seeking
equity must come into court with clean hands. 
Truly v. Austin, 744 S.W.2d 934, 938 (Tex. 1988).  A court will generally deny equitable relief
to a party whose conduct with the issue in dispute is unconscionable, unjust,
or marked by want of good faith.  Jackson
Law Office, P.C. v. Chappell, 37 S.W.3d 15, 27 (Tex. App.CTyler 2000, pet.
denied); Crown Constr. Co. v. Huddleston, 961 S.W.2d 552, 559 (Tex. App.CSan Antonio 1997,
no pet.).  However, the doctrine Adoes not operate
to repeal all sinners from a court of equity.@  1st Coppell Bank v. Smith, 742 S.W.2d
454, 464 (Tex. App.CDallas 1987, no writ).  The clean hands doctrine should not be
applied unless the party asserting the doctrine has been seriously harmed and
the wrong complained of cannot be corrected without the application of the
doctrine.  City of Fredericksburg v.
Bopp, 126 S.W.3d 218, 221 (Tex. App.CSan Antonio 2003,
no pet.); Flores v. Flores, 116 S.W.3d 870, 876 (Tex. App.CCorpus Christ
2003, no pet.).  It is within the trial
court=s discretion to
determine whether a party has come to court with unclean hands.  Willis v. Donnelly, 118 S.W.3d 10, 38
(Tex. App.CHouston [14th Dist.] 2003, pet. filed); Wynne
v. Fischer, 809 S.W.2d 264, 267 (Tex. App.CDallas 1991, writ
denied).  








RDG has not shown that it has been harmed
by the unauthorized REP switch.  Specifically,
it has not established that it would have paid Reliant Energy, or any other
service provider, a different amount for the same service provided by
Gexa.  Therefore, the trial court did not
abuse its discretion in not finding that Gexa had unclean hands.  RDG=s fourth issue is
overruled.

   Request for
Additional Findings of Fact & Conclusions of Law

In its fifth issue, RDG complains the trial court erred in
not adopting its requested additional findings of fact, namely:

a.       Plaintiff Gexa Corp. (APlaintiff@) is an Retail Electric Provider (AREP@), as that term is defined  by Chapter 25, Subchapter A, ' 25.5(115) of the Substantive Rules
Applicable to Electric Service Providers promulgated by the Public Utility
Commission of Texas (the ARules@).

b.       On or about June 8, 2002, Plainitff
received a Residential Electricity AuthorizationBApartment Units [form] from a
person named Jesus Fornadeo (the AFornadeo Authorization@) authorizing Plaintiff to switch the REP of Mr. Fornadeo=s apartment at the Edgebrook
Apartments located at 101 East Edgebrook, Houston, Texas 77034.

c.       The Fornadeo Authorization identified
Linda Talbert at 713-944-7740 as the manager or agent contact at the Edgebrook
Apartments.

d.       The Edgebrook Apartments have never been
owned or operated by Defendants.

e.       Linda Talbert has never been a manager or
agent of Defendants.

f.        Defendants have never maintained the
telephone number of 713-944-7740. 

g.       Jesus Fornadeo has never been an
employee, agent, or representative of Defendants.

h.       Jesus Fornadeo has never had authority,
either actual or apparent, to authorize a switch of Defendants= REP at the Westpoint Village
Apartments. 

i.        On or about June 8, 2002, Plaintiff
switched the REP of one of the meters owned by Defendants from Reliant Energy
to Plaintiff without the knowledge or consent of Defendants.








j.        Plaintiff did not obtain Defendants= authorization, or verification of
same, for the REP switch in accordance with ' 25.474 of the Rules.

k.       On or about November 12, 2002, Plaintiff
for the first time billed Defendants for electrical charges incurred after the
REP switch in the amount of $47,425.21.

l.        On or about December 5, 2003, Defendants
notified Plaintiff that the $47,425.21 in electrical charges billed by
Plaintiff were not authorized by Defendants in compliance with ' 25.474 of the Rules and demanded
that Plaintiff cease charging Defendants for the unauthorized charges, remove
the unauthorized charge from Defendants= bill and not re-bill Defendants for the unauthorized
charges.

m.      Plaintiff
refused Defendants= demand.

RDG also contends the trial court erred in not making the
following requested conclusions of law:

a.       Plaintiff violated ' 25.474 of the Rules by failing to
obtain Defendants= authorization to switch Defendants= REP on June 8, 2002 and by failing
to verify Defendants= authorization to switch Defendants= REP on June 8, 2002.

b.       Plaintiff violated ' 25.481 of the Rules by failing to
cease charging Defendants for the unauthorized charges after receiving notice
that the charges were unauthorized; by failing to remove the unauthorized
charge from Defendants= bill after receiving notice that
the charges were unauthorized and by failing to not re-bill Defendants for the
unauthorized charges after receiving notice that the charges. [sic]

c.       Gexa may recover under the unjust
enrichment theory because RDG obtained a benefit from Gexa by fraud, duress, or
the taking of undue advantage.

d.       Gexa
has clean hands.








Texas Rule of Procedure 298 states A[t]he court shall
file any additional or amended findings and conclusions that are appropriate .
. .@  Tex.
R. Civ. P. 298.  Additional
findings of fact and conclusions of law are required only if they relate to
ultimate or controlling issues.  Rafferty
v. Finstad, 903 S.W.2d 374, 376 (Tex. App.CHouston [1st
Dist.] 1995, writ denied); Hunter v. NCNB Tex. Nat=l Bank, 857 S.W.2d 722,
727 (Tex. App.CHouston [14th Dist.] 1993, writ
denied).  Thus, the trial court is not
required to make additional findings and conclusions (1) that are unsupported
in the record, relate merely to evidentiary matters, or are contrary to other
previous findings;[4]
(2) if the original findings of fact and conclusions of law A>properly and
succinctly relate the ultimate findings of fact and law necessary to apprise
[the party] of adequate information for the preparation of his or her appeal=@;[5]
or (3) if the requested findings and conclusions will not result in a different
judgment.[6]  The trial court is not required to set out in
detail every reason or theory by which it arrived at its final
conclusions.  Associated Tel.
Directory Publishers v. Five D=s Publ=g Co., 849 S.W.2d 894,
901 (Tex. App.CAustin 1993, no writ).  

RDG must show from the record that the
trial court=s failure to file additional findings of
fact and conclusions of law was reasonably calculated to cause and did cause
the rendition of an improper judgment or probably prevented it from properly
presenting the matter to the court of appeals. 
In re R.D.Y., 51 S.W.3d at 322; Tamez, 822 S.W.2d at
693.  








RDG=s requested
additional findings concern the fact that Gexa was not authorized to switch the
REP at the apartment complexCa fact that was
not only undisputed by Gexa, but fully admitted to.  With respect to RDG=s requested
additional conclusion of law that Gexa violated section 25.474 of the Rules by
switching the apartment complex=s REP without RDG=s consent and by
failing to verify consent, Gexa does not contest the fact that it did not have
RDG=s consent.  With respect to RDG=s requested
additional conclusion of law that Gexa violated section 25.481, we have already
determined that section 25.481 applies to unauthorized charges to an REP=s already existing
customer, not a new customer that is the result of slamming.  With respect to RDG=s requested
additional conclusion of law that Gexa may recover under the theory of unjust
enrichment because RDG obtained a benefit by fraud, duress or taking undue
advantage, the failure to make this conclusion has not prevented RDG from
adequately presenting its issues on appeal. 
Likewise, with respect to RDG=s requested
additional conclusion that Gexa has clean hands, the failure to make this
conclusion, once again, has not prevented RDG from adequately presenting its
issues on appeal.  

RDG has not shown the trial court=s failure to file
its requested additional findings of fact and conclusions of law was reasonably
calculated to cause, and did cause, the rendition of an improper judgment or
probably prevented it from properly presenting the matter to the court of
appeals.  RDG=s fifth issue is
overruled.  

Accordingly, the judgment of the trial
court is affirmed.  

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed April 26, 2005.

Panel
consists of Chief Justice Hedges and Justices Hudson and Seymore.











[1]  The purpose of
Section 39.101 of the Texas Utilities Code is to provide protections for
customers of utility providers, including the right to choose an REP, to have
that choice honored, and to not have the REP changed without the customer=s consent.  Tex. Util. Code Ann. ' 39.101(b)(2) (Vernon Supp. 2004B05).  Customers
are also entitled to protection from unfair, misleading, or deceptive
practices, including protection from being billed for unauthorized
services.  Id. at ' 39.101(b)(6). 
In order to achieve these goals, A[t]he
commission has the authority to adopt and enforce such rules as may be
necessary or appropriate to carry out Subsections (a)-(d), . . .@  Id. at ' 39.101(e).  





[2]  Prior to the
Texas Supreme Court=s decision in Heldenfels Brothers, several
court of appeals, had stated that to be entitled to restitution, a plaintiff
must not only show unjust enrichment, but that the defendant had wrongfully
secured a benefit or had passively received one which it would be unconscionable
to retain.  See, e.g., Oxford Fin.
Cos. v. Velez, 807 S.W.2d 460, 465 (Tex. App.CAustin
1991, writ denied); Community Mut. Ins. Co. v. Owen, 804 S.W.2d 602, 606
(Tex. App.CHouston [1st Dist.] 1991, writ denied); City of
Corpus Christi v. S.S. Smith & Sons Masonry, Inc., 736 S.W.2d 247, 250
(Tex. App.CCorpus Christi 1987, writ denied); Barrett v.
Ferrell, 550 S.W.2d 138, 143 (Tex. Civ. App.CTyler
1977, writ ref=d n.r.e.). 





[3]  Johnson v.
Maund Auto. Group, L.P., No. 03-03-00730-CV, 2004 WL 1792400, at *3 (Tex.
App.CSan Antonio Aug. 12, 2004, pet. denied) (mem. op.); Villarreal,
136 S.W.3d at 270; Gotham Ins. Co. v. Petroleum Dev. Corp., No.
04-01-00375-CV, 2003 WL 21696625, at *7 (Tex. App.CSan Antonio July 23, 2003, pet. denied) (mem. op.); Matagorda
County, 975 S.W.2d at 785; Nationscredit Corp. v. CSSI, The Support
Group, Inc., No. 05-99-01612-CV, 2001 WL 200147, at *6 (Tex. App.CDallas Mar. 1, 2001, no pet.) (not designated for
publication); Helm v. Landry Serv. Co., No. 01-94-00348-CV, 1995 WL
319014, at *5 (Tex. App.CHouston [1st Dist.] May 25, 1995, writ denied) (not
designated for publication).





[4]  Rafferty,
903 S.W.2d at 376 (citing Simmons v. Compania Financeria Libano, S.A.,
830 S.W.2d 789, 791B92 (Tex. App.CHouston
[1st Dist.] 1992, writ denied)).  





[5]  In re
R.D.Y., 51 S.W.3d 314, 322 (Tex. App.CHouston
[1st Dist.] 2001, pet. denied) (quoting In re Marriage of Morris, 12
S.W.3d 877, 886 (Tex. App.CTexarkana 2000, no pet.)). 





[6]  Tamez v.
Tamez, 822 S.W.2d 688, 693 (Tex. App.CCorpus
Christi 1991, writ denied) (citing Shelby Int=l, Inc. v. Wiener, 563 S.W.2d 324, 328 (Tex. Civ. App.CHouston
[1st Dist.] 1978, no writ)).