In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00015-CV
______________________________


CARL BLANKENSHIP, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF 
ROSALIND BLANKENSHIP, DECEASED, Appellant
 
V.
 
JACKSON WIGHTMAN, Appellee


                                              

On Appeal from the County Court at Law
 Lamar County, Texas
Trial Court No. 15,247


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            In 1991, Carl and Rosalind Blankenship agreed to purchase, under a single executory contract
for deed, two separate residences in Hunt County. The Blankenships began living in one of those
residences (the Blankenship residence). In 2002, by a second contract for deed, the Blankenships
agreed to sell to Jackson Wightman the other house (the Wightman residence). In that contract,
Wightman agreed to pay for the fire insurance on the Wightman residence. After both contracts were
partially performed, but remained outstanding, the Wightman residence was destroyed in a fire; and,
not long thereafter, both Rosalind Blankenship and the Blankenships' original vendor, Christine
Caldwell, died. The issues before this Court spring from how the fire insurance proceeds were
applied.
            Because of the way the fire insurance policy on the Wightman residence was issued, the
$34,000.00 in loss payment proceeds were payable to Rosalind Blankenship and Christine Caldwell. 
Before Caldwell died, she received the proceeds and applied them to the balance owed on the
Blankenship residence. That application of the insurance proceeds, plus a subsequent payment by
Blankenship to Caldwell, completely paid the balance owing on the Blankenship residence. At the
time of the fire, $18,500.00 remained owing on the Wightman residence.
            Wightman sued Carl Blankenship, both individually and as Independent Administrator of the
Estate of Rosalind Blankenship, seeking application of the insurance proceeds to the balance owed
on the Wightman residence, judgment for the remaining balance of the proceeds and attorney's fees,
and an equitable lien on the Blankenship residence. The trial court granted Wightman summary
judgment that his contract was paid in full, that Blankenship owed him the remaining balance of the
insurance proceeds in the amount of $15,500.00, plus attorney's fees in the amount of $9,485.96, and
that Wightman had an equitable lien in the sum of $24,985.96 in Blankenship's interest in the
Blankenship residence.
            In three points of error, Blankenship claims that the equitable lien violated homestead rights,
that the required parties had not been joined, and that the attorney's fees judgment was not supported
by legally or factually sufficient evidence. We modify the judgment of the trial court, and affirm it
as modified, because (1) granting an equitable lien in Blankenship's rights in his residence did not
violate homestead rights to the extent the insurance proceeds were paid toward the purchase money
for the Blankenship residence, (2) there was no defect in parties, and (3) sufficient evidence
supported the judgment for attorney's fees.
(1)       Granting an Equitable Lien in Blankenship's Rights in His Residence Did Not Violate
Homestead Rights to the Extent the Insurance Proceeds Were Paid Toward the Purchase
Money for the Blankenship Residence
            It is without dispute that the Blankenship residence—that is, the property Blankenship
purchased from Caldwell and retained—is Blankenship's homestead, and there is no claim that it has
been abandoned. Blankenship asserts that the trial court erred in granting Wightman an equitable
lien in the Blankenship homestead. He appropriately argues that a lien can be created on a
homestead only for purchase money, improvements, or taxes. See Tex. Const. art. XVI, § 50. But
he also cites Hruska v. First State Bank of Deanville, 747 S.W.2d 783 (Tex. 1988), for the
proposition that, before any equitable lien can be created in a homestead, there must be an express
or implied agreement between the parties that would support creation of that lien. Blankenship
reasons that, because there was no express or implied contract between Blankenship and Wightman
that would support a lien on Blankenship's homestead, the equitable lien ordered by the trial court
was invalid. We disagree with the reasoning and conclusion.
            Hruska is not as broad as Blankenship would have it. The Hruskas were homeowners who
sought and obtained bank financing for improvements to their homestead. All appeared to be in
order until the bank reviewed their loan papers after the improvements had been completed and
discovered that no improvements contract had ever been signed. Though the trial court and the court
of appeals both agreed the bank should have an equitable lien on the Hruskas' homestead for the loan
proceeds used to improve the homestead, the Texas Supreme Court invalidated the lien, because
there was no written preimprovement contract to support the lien. See id. Hruska is distinguishable
from the facts before us. In Hruska, no preimprovement written contract existed as is required
before an improvement lien is created on homestead property. Here, a contract existed between
Caldwell and Blankenship providing for purchase of the Blankenship residential property and for
the payment of purchase money. Wightman's insurance proceeds were used to pay on Blankenship's
purchase money obligation on that very contract.
Constructive trusts, being remedial in nature, have the very broad function of
redressing wrongs or unjust enrichment in accordance with basic principles of equity
and justice. There is no unyielding formula to which a court of equity is bound; the
equity of the transaction will shape the relief granted. [T]he homestead protection
afforded by the Texas Constitution was never intended to protect stolen funds. 
Stolen funds used for the purchase of a homestead or improvement of an existing
homestead can never acquire homestead rights as they are held in trust for the rightful
owners of the funds. Appellant cites no authority for the proposition that we should
distinguish between funds used to purchase outright or improve a homestead and
those used to pay for the home incrementally over a period of time. We decline to
make the distinction. . . . Such a distinction can only lead to unjust, inequitable, and
absurd results.
Bransom v. Standard Hardware, 874 S.W.2d 919, 928 (Tex. App.—Fort Worth 1994, writ denied)
(citations omitted).
            Since it is established in the summary judgment evidence that the insurance proceeds, to
which Wightman was entitled, were credited to the balance of the purchase money owed on the
Blankenship residence, Wightman is entitled to be subrogated to the rights of Caldwell, the vendor
who received those funds—rights equivalent to those held by a purchase money lienholder, to secure
repayment of purchase money. See Heggen v. Pemelton, 836 S.W.2d 145, 147–48 (Tex. 1992);
Eggemeyer v. Eggemeyer, 623 S.W.2d 462, 466 (Tex. App.—Waco 1981, writ dism'd w.o.j.).
            But we note that the equitable lien was awarded, not only for the amount of the purchase
money paid with the insurance proceeds, $15,500.00, but also the attorney's fees awarded by the trial
court, $9,485.96. While we have held the equitable lien valid in the amount of the $15,500.00
applied to the purchase money obligation, we find the lien invalid as to the attorney's fees, since
those attorney's fees were not incurred as purchase money for the homestead, improvements to the
homestead, nor taxes on the homestead. See Heggen, 836 S.W.2d at 147–48.
            The equitable lien on Blankenship's rights in the homestead was valid as to the purchase
money portion, but not as to the attorney's fees portion.
(2)       There Was No Defect in Parties
            Blankenship also asserts a defect in parties in that heirs of Rosalind Blankenship—namely
Justin Arrington and Ashley Arrington, allegedly her children by a prior marriage—were not joined
as parties. Blankenship cites Sections 17.002 and 37.006(a) of the Texas Civil Practice and
Remedies Code and Rule 39(a) of the Texas Rules of Civil Procedure to support this point of error. 
Blankenship's argument rests on his assertion that those two unjoined heirs own an interest in the
Blankenship residence, which was affected by the trial court's judgment.
            When a suit against a decedent's estate involves the title to real property, not only must the
executor or administrator be joined, the heirs of the decedent must also be joined as defendants. 
Tex. Civ. Prac. & Rem. Code Ann. § 17.002 (Vernon 1997). But Section 17.002 has been
interpreted to exclude suits seeking to establish just a lien on the property. See Migura v. Dukes, 770
S.W.2d 568, 569 (Tex. 1989). Since this suit merely affected the real property by establishing a lien
on Blankenship's interest in the property, Section 17.002 does not apply.
            When declaratory relief is requested, all persons whose interests will be affected by the
declaratory relief should be made parties; otherwise, their interests cannot be affected. Tex. Civ.
Prac. & Rem. Code Ann. § 37.006(a) (Vernon 1997). Here, the relief granted by the trial court
affecting the Blankenship residence was a lien against only the interest of Blankenship in the
property. Blankenship was a party to the lawsuit. Therefore, Section 37.006(a) requires no change
to the judgment.
            The same is true of Rule 39(a) of the Texas Rules of Civil Procedure. Rule 39(a) requires
joinder of all persons the presence of whom in the lawsuit is necessary in order to render complete
relief. See Tex. R. Civ. P. 39(a). Because the relief granted by the trial court was limited to a lien
in Blankenship's interest in the Blankenship residence, Rule 39(a) requires joinder of no additional
person.
            Because the trial court's judgment affects the Blankenship residence only by establishing a
lien, and because that lien applies only to Blankenship's interest in the Blankenship property, the
nonjoinder of Rosalind's children by a previous marriage was not error. Thus, we overrule this point
of error.
(3)       Sufficient Evidence Supported the Judgment for Attorney's Fees
            Blankenship finally asserts that the attorney's fee award was not supported by legally or
factually sufficient evidence, because the $9,485.96 awarded was for legal fees and expenses
incurred in Wightman's legal representation before Wightman filed his third amended original
petition—in which he pled, for the first time, a cause of action under the Texas Declaratory
Judgment Act. See Tex. Civ. Prac. & Rem. Code § 37.009 (Vernon 1997).
            An affidavit by Wightman's attorney, and an attachment to that affidavit, provides summary
judgment evidence as to attorney's fees and expenses. The attachment sets out fees and expenses
totaling $10,235.96, $750.00 of which came from handwritten additions to a printed or typed
statement. Without the handwritten additions, the statement totals $9,485.96, the amount the trial
court awarded. Clearly, the numbers and the detail in the attached statement provide support for
amount of the trial court's judgment for attorney's fees and expenses.
            The only question raised by Blankenship is whether there is sufficient summary judgment
evidence tying those fees and expenses—incurred before the declaratory judgment cause of action
was pled—to the declaratory judgment cause of action, the cause of action which statutorily can
support an award for attorney's fees. We believe the evidence is sufficient. In the summary
judgment affidavit, counsel states that the statement for those fees and expenses sets forth "the work
performed that was performed that was reasonable and necessary to prosecute the claim thus far." 
That affidavit was dated October 26, 2005, and does not indicate that the various causes of action
are severable from "the claim." We conclude this constitutes legally and factually sufficient evidence
to support the award for attorney's fees and expenses for pursuing Wightman's claim, no matter what
causes of action were asserted or when.
 
 
 
 
            We modify the judgment by reducing the lien against Blankenship's interest in the
Blankenship property to $15,500.00 and, as modified, affirm the judgment.
 


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 5, 2006
Dated Decided:           July 7, 2006